ATLANTIC PAINTING & CONTRACT-
ING INC., and Buckeye Painting &
Sheeting Co., Inc., A Joint Venture,
Movants,

v.

NASHVILLE BRIDGE COMPANY,
Respondent.

Supreme Court of Kentucky.

March 29, 1984.

Rehearing Denied July 5, 1984.

Francis T. Goheen, Goheen, Garrett & McCann, Paducah, for movants.

Robert C. Manchester, James A. Harris, Osborne & Harris, Paducah, for respondent.

LEIBSON, Justice.

On July 1, 1969, Nashville Bridge Company contracted with the Commonwealth of Kentucky for the construction of the superstructure of the I–24 bridge across the Ohio River between McCracken County, Kentucky and Massac County, Illinois. On September 10, 1969, Nashville Bridge subcontracted with Atlantic Painting & Contracting Inc. and Buckeye Painting & Sheeting Co., Inc., a Joint Venture, for Atlantic/Buckeye to provide painting services for the superstructure to the bridge.

Both the contract and the subcontract were for a fixed price, based on scheduled completion in the fall of 1971. But the work was not completed until approximately three (3) years later. Atlantic/Buckeye claimed damages from escalated costs incurred by reason of the delay in completion.

Atlantic/Buckeye first notified Nashville Bridge that it expected compensation "for the additional expenses due to the escalation on wages, material, insurances e.t.c. (sic.)" by letter of December 11, 1972. Both parties went on to completion of the work with no specific arrangements for the escalated costs due to delay.

On March 21, 1974, Atlantic/Buckeye's attorney wrote Nashville Bridge that "by reason of the construction delays and the lack of completion sufficient to allow my clients to proceed timely, it has been computed that an additional $56,205.93 must be recognized as an extra charge under this contract." There being no response Atlantic/Buckeye sent a second letter demanding arbitration. Section 26 of the subcontract between Atlantic/Buckeye and Nashville Bridge provided that "in the event of any dispute not satisfactorily settled" where there was "no provision for settle-

ment in the Prime Contract, then either party hereto may ... demand an arbitrator."

Nashville Bridge resisted arbitration of this dispute on grounds that payments under the contract were limited to the amounts specified therein; that the payment demanded was beyond the scope of the contract so not subject to arbitration. After negotiations, the parties agreed to submit to arbitration the following issue, as expressed in a letter describing the submission from the American Arbitration Association:

"Whether, under the contract involved in the matter, is the question of escalated costs of labor and materials resulting from construction delays, subject to arbitration under the terms of the subject contract."

Thereafter attorneys for both Nashville Bridge and Atlantic/Buckeye submitted briefs with the American Arbitration Association. On April 15, 1975, an arbitrator duly appointed entered an award to the effect that the claim was not "subject to arbitration."

Whether Atlantic/Buckeye could claim additional costs resulting from delays was a threshold question to be decided *before* getting into the facts related to proving the claim. But the arbitrator's decision expressed as a "reason" underlying the award failure to "give notice of the delay as required under the general specifications." This statement addresses itself to the conduct of the parties as to which no proof had been taken.

Atlantic/Buckeye filed suit in the McCracken Circuit Court on February 27, 1976, demanding judgment against Nashville Bridge for escalated costs from delay, and also for additional amounts for retainage and extra work.

Shortly before trial Nashville Bridge moved for summary judgment on grounds that the arbitrator's award was a bar to the circuit court action. This motion squarely presented the sole question on this appeal. But the trial court tried the case on its merits without ruling on the motion for summary judgment. The trial court found for Atlantic/Buckeye on each of its various claims, and for Nashville Bridge on a counterclaim, and assessed damages at a net amount of $139,083.53 against Nashville Bridge.

The trial court found that both parties entered into the contract with intention that it would be completed in the fall of 1971; that when it became clear that the completion date could not be met, by their conduct, if not expressly, they agreed to continue with the work to completion adjusting for delay damages and extra work on an ad hoc basis. The trial court held that the contract between the parties had undergone a "novation due to the delays" and that they had worked together toward a common goal on their own terms established outside the contract. The court found that neither of the parties in the course of dealing with the other explicitly followed all of the terms in the original contract. The trial court pointed to the fact that Nashville Bridge later brought suit and collected substantial delay damages from the Commonwealth of Kentucky for work done during the period beyond the term of its contract, and that its claim against the Commonwealth originally included delay damages for painting, as evidence for the conclusion that "Nashville Bridge obviously expected a new contract except to the extent of conforming to acceptable standards."

On appeal the Court of Appeals reversed so much of the decision as provided for payment of delay damages and extra work on grounds that "the prior arbitration award was a bar to further litigation." The Court of Appeals stated correctly that "Neither we nor the circuit court may evaluate the evidence for either party and substitute our judgment for that of the arbitrator *if the award is within the scope of the submission* and not fraudulent." (Emphasis added).

On discretionary review the sole question is whether the arbitrator's award exceeded the scope of the question presented. We

must decide exactly what question was submitted for arbitration and what the arbitrator decided.

◼ Appellee relies on the federal Arbitration Act, found in 9 U.S.C. Sections 1–14. Section 2 specifies that "a written provision in ... a contract evidencing a transaction involving (interstate) commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The present contract is certainly one in interstate commerce, and this statute applies. However, Kentucky law is no different. *Fite and Warmath Constr. Co., Inc. v. MYS Corp.*, Ky., 559 S.W.2d 729 (1977).

◼ Initially Nashville Bridge took the position that there was no right to delay damages, so there was nothing to arbitrate. On the other hand Atlantic/Buckeye claimed it was entitled to collect delay damages. If so, the arbitration clause, which was broad enough to encompass "any dispute" between the parties, included delay damages. The essence of the arbitrator's award, when closely read, is to recognize the existence of a right to collect delay damages, so it would be subject to arbitration, *but* to find that Atlantic/Buckeye was foreclosed from pursuing its claim for delay damages because it failed to give proper notice that additional compensation would be expected before proceeding with work for which such a claim would be made.

The purpose of the contract provisions related to notice is obvious. It would enable Nashville Bridge to monitor, supervise and challenge additional costs not covered by the contract as they occur. But the question of whether there was sufficient compliance with the notice provisions of the contract in the circumstances was a factual determination to be made on evidence to be

presented once it had first been decided that delay damages were possible under the contract, and thus subject to arbitration. In short, the arbitrator determined the question submitted for arbitration, whether Atlantic/Buckeye could make a claim for delay damages, favorably to Atlantic/Buckeye, but then determined the factual question, whether Atlantic/Buckeye was entitled to delay damages, adversely to Atlantic/Buckeye. The second point was a factual determination of issues related to the giving of notice which could only come up *after* the threshold question submitted for arbitration had been answered first.

In its brief to the arbitrator, Nashville Bridge stood on the proposition that "arbitration is a matter of contract and a party cannot be required to submit a matter to arbitration (i.e., delay damages) which he has not agreed (in the contract) to submit." Nashville Bridge took the position that its contract with Atlantic/Buckeye was "a lump sum contract" that "recognized that the Sub-Contractor could be delayed in completing its work by others and no provision was made for additional compensation because of such delays."

It then took a fallback position, conflicting with the first premise, that if the arbitrator should find that Atlantic/Buckeye would be entitled to claim delay damages, then failure to comply with a notice provisions before work commenced "would constitute a waiver of the claim." Its documentation for claiming a notice defect was letters from the Sub-Contractor dated March 21, 1974 and April 12, 1974, attached to its brief to the arbitrator. These letters were too late if the notice provisions of the contract were applicable. The arbitrator decided implicitly that delay damages would be recoverable, and then further decided that the right to recovery was cut off by failing to comply with the notice provisions of the contract.[1] Actually there was

---

1. The contract consists of the "Sub-Contract" between Atlantic/Buckeye and Nashville Bridge for painting on the superstructure and the "Prime Contract" between Nashville Bridge and

the Commonwealth of Kentucky, including plans and specifications for the painting. But the language of certain sections of the prime contract relating to notice and supervision "for

a much earlier letter dated December 11, 1972 from Atlantic/Buckeye to Nashville Bridge notifying that "the above project was originally scheduled for completion for December 7, 1971, and our Contract with you and the prices quoted to you for the painting were based on that completion schedule." The letter concludes:

"We are bringing these facts to your attention and ask for your consideration for the additional expenses due to the escalation on wages, material, insurances e.t.c. and we feel it is only fair that we must be compensated accordingly."

The arbitrator proceeded to his decision unaware of the earlier letter, or of any other evidence bearing on the questions of notice and supervision.

Was notice part of the question presented to the arbitrator? The only submission was the threshold question of whether delay damages could be recovered, or were foreclosed, under the contract.

The arbitrator was asked to interpret the contract, and responded with a factual determination as to performance of certain conditions precedent which he found to apply if additional compensation would be claimed for such work. The issue before the arbitrator was the question of arbitrability. The arbitrator's answer assumed arbitrability and then went beyond the issue submitted to make a factual determination of a potential defense to the claim of "escalated costs of labor and materials resulting from construction delays."

■ An arbitrator's decision on a matter not submitted to him for his decision is void and not binding on the courts or anybody else.

"The basic test of the validity of an arbitration award lies in the conformity to the submission. An award which does not substantially comply with the terms of the submission is not binding upon the parties and will not be upheld, and the arbitrators cannot include in their award a determination of things or rights not

within the scope of the submission, for such action is unauthorized and at least to that extent void, even if they act in good faith and from proper motives." Corpus Juris Secundum, Arbitration, Section 108.

■ The contract provides it is to be governed by the law of Tennessee. In *Jackson v. Chambers*, 510 S.W.2d 74 (Tenn., 1974), the Supreme Court of Tennessee refused to enforce an arbitration award on grounds "(t)he arbitrators had no authority to go in their inquiries beyond the powers delegated by the terms of the submission." To the same effect is *Smith v. Board of Education*, 217 Ky. 702, 290 S.W. 477 (1927), holding "arbitrators ... must be guided strictly by the terms of the submission, and are not authorized to settle anything not specifically submitted to them, or to direct a settlement of the controversy in a manner not embraced in the article of submission." Here Nashville Bridge argues that even were we to decide that the notice question was beyond the scope of the original submission, we should consider that it became subject to the power of the arbitrator to decide because Nashville Bridge raised it in its brief before the arbitrator, and Atlantic/Buckeye's counsel alluded to the notice argument in its response. But in fact Atlantic/Buckeye's response before the arbitrator was "Counsel for respondent, Nashville Bridge Co., has chosen to argue the merits of the claim, rather than the question of arbitrability." Only incidentally did counsel for Atlantic/Buckeye further argue that the letter of March 21, 1974, to which Nashville Bridge had alluded, contradicted the charge "that absolutely no notice was received with regard to this request for additional compensation until *after* all the work had been performed."

We do not construe this response as enlarging the submission. We agree with the decision in *Delta Lines, Inc. v. Brother-*

work or material not clearly covered in the contract or not ordered by the (State) Engineer as extra work," become confusing and ambiguous when applied to right to delay damages for the Sub-Contractor in the circumstances of this case.

*hood of Teamsters,* 409 F.Supp. 873 (N.D. Cal.1976), in addressing this matter:

"The Union further contends that Delta impliedly recognized the arbitrator's power to decide this question by briefing and arguing the issue .... The attorney representing Delta at the hearing before Arbitrator Myers made clear his position that the only issue to be arbitrated was whether Weaver was discharged for just cause. This Court will not say that plaintiff 'recognized' the arbitrator's authority merely because it ... took the added precaution of arguing those issues on the merits once it appeared the arbitrator had decided to include them in his consideration." 409 F.Supp. at 875–6.

It is evident from the failure to offer the 1972 letter notifying Nashville Bridge that Atlantic/Buckeye expected additional compensation for escalated costs, that counsel was neither prepared to meet this new issue, nor seeking to enlarge the scope of the submission. The 1972 letter, plus contemporaneous construction by conduct of the parties, were all factual matters which would necessarily be involved in the subsequent arbitration after a favorable determination of arbitrability. We find nothing in Atlantic/Buckeye's reply brief on arbitration justifying a different view of the basic question before this Court, which was whether the arbitrator's award exceeded the submission. The record in this case supports appellant's position that it did. The decision of the Court of Appeals to the contrary is reversed.

After discretionary review was accepted in this case, Nashville Bridge filed a motion to vacate the order granting discretionary review, which we considered when the case was heard on the merits.

Nashville Bridge takes the position that the recent United States Supreme Court decision in *Southland Corp. v. Keating,* — U.S. —, 104 S.Ct. 852, 79 L.Ed.2d 1 decided January 23, 1984, is dispositive of this case. In *Southland Corp.,* the United States Supreme Court holds that the federal "Arbitration Act," Title 9, U.S.Code, Secs. 1–14, preempts the *"substantive* law" regarding arbitration "in contracts involving interstate commerce." Based on this principle the California Franchise Investment Law was found in conflict with and preempted by the federal Arbitration Act where the California law invalidates arbitration agreements in interstate commerce. The Court holds:

"In creating a substantive rule applicable in state as well as federal courts, Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." — U.S. at —, 104 S.Ct. at 861.

Nashville Bridge contends that this decision means that the three months notice provision in Section 12 of the federal Arbitration Act, which applies to *motions* in federal court to vacate arbitration awards on grounds specified, are now part of substantive state law.

There is nothing new in *Southland Corp. v. Keating.* There is a legion of cases before *Southland Corp.* all holding that the substantive policy expressed in the provisions of the federal Arbitration Act are preemptive. The leading Kentucky case so holding is *Fite and Warmath Construction Co., Inc. v. MYS Corp., supra:*

"(T)he U.S. Arbitration Act has to be applied in state courts as well as in federal courts where the suit involves a contract evidencing a transaction in interstate commerce regardless of the form in which it is brought." 559 S.W.2d at 733.

But there is nothing in the federal Arbitration Act preempting state jurisdiction of the contract action filed by Atlantic/Buckeye and nothing in the Act remotely suggesting that the "motion to vacate" procedure, including the three months time limitation set up for federal proceedings, has any application at all to such state action. The federal Arbitration Act covers both substantive law *and* a procedure for federal courts to follow where a party to arbitration seeks to enforce or vacate an arbitration award in federal court. The procedural aspects are confined to federal cases. Nashville Bridge conceded that nothing in the Act divests state courts of

concurrent jurisdiction in cases involving contracts in interstate commerce. We regard Nashville Bridge's motion to vacate discretionary review not as a new question raised by the recent Supreme Court decision in *Southland Corp. v. Keating,* but as a weak reed to shore up a leaky boat. The argument that the notice provision of Section 12 is substantive law is not involved directly or inferentially in *Southland Corp. v. Keating.* Injecting this argument into the present case under the guise of a motion to vacate discretionary review was a waste of this Court's time.

Atlantic/Buckeye cross-appealed from so much of the trial court's judgment as failed to award interest on the $139,083.53 judgment in its favor from September 4, 1974 until paid. September 4, 1974 is the date the bridge project was completed.

The trial court's judgment allowed interest from the date the complaint was filed, February 27, 1976, on the portion of Atlantic/Buckeye's claim that Nashville Bridge conceded, and judgment on the entire claim from August 12, 1981, the date of final judgment in the trial court. In Kentucky "the rate of interest on judgments is a statutory rather than a contractual matter." *Ridge v. Ridge,* Ky., 572 S.W.2d 859 (1978). The statute in question is KRS 360.040 which now provides a statutory rate of "twelve percent (12%) interest compounded annually from its date." This statute has historically been interpreted as allowing interest on "unliquidated" claims only from date of judgment.

■ Certain items totaling $24,922.05 were "admitted" due in appellee's answer. As such they then were a liquidated claim.[2] Appellant was entitled to interest at the statutory rate from and after that date. But appellant offers nothing sufficient to establish this claim was liquidated at an earlier point in time.

■ The remainder of the trial court's judgment was for escalated costs and extra work the value of which was established by proof offered during the trial, and as such

was an unliquidated claim for which only postjudgment interest is statutorily allowable. That rate was 8% as of the date of judgment. Effective July 15, 1982, it was amended to 12%. In *Ridge v. Ridge, supra,* we held:

"(T)he increase of the legal rate (provided in KRS 360.040) applies prospectively to prior unsatisfied judgments, the new rate beginning with the effective date of the amendment."

Therefore, as to the admitted items (the liquidated claim) Atlantic/Buckeye is entitled to interest at 6% from February 27, 1976 to June 19, 1976, when the legal rate went from 6% to 8%, and to 8% from June 19, 1976 to July 15, 1982, when the legal rate went from 8% to 12%, and to 12% thereafter. As to the remainder of the judgment, Atlantic/Buckeye is entitled to interest at the rate of 8% from date of judgment to July 15, 1982, and to 12% thereafter.

The judgment of the Court of Appeals is reversed. The judgment of the trial court is affirmed, and shall bear interest as stated in this opinion.

STEPHENS, C.J., and AKER, GANT, LEIBSON, STEPHENSON and WINTERSHEIMER, JJ., concur.

---

**2.** "Liquidated claim. Claim, amount of which has been agreed on by parties to action or is fixed by operation of law. *Tapp v. Tapp's Trus-* tee, 299 Ky. 345, 185 S.W.2d 534, 535." *Black's Law Dictionary,* 5th Ed., p. 839.