**Colleen JACKSON, Appellant,**

v.

**William Grant TULLAR, Jr.; Justin B. Duncan; and Sweet & Sassy, Inc., d/b/a Ginger & Pickles, Appellees.**

**and**

**William Grant Tullar, Jr. and Sweet & Sassy, Inc., d/b/a Ginger & Pickles, Cross–Appellants,**

v.

**Colleen Jackson; Big Kahuna, Inc.; and Justin B. Duncan, Cross–Appellees.**

**Nos. 2005–CA–001006–MR, 2005–CA–001140–MR.**

Court of Appeals of Kentucky.

June 1, 2007.

Discretionary Review Denied by Supreme Court Sept. 10, 2008.

David V. Oakes, Paducah, KY, for appellant/cross-appellee, Colleen Jackson.

Richard L. Walter, Paducah, KY, for appellee, Justin Duncan.

John R. Martin, Jr., Louisville, KY, for appellees/cross-appellants, William Grant Tullar, Jr. and Sweet & Sassy, Inc., d/b/a Ginger & Pickles.

James A. Sigler, James R. Coltharp, Jr, Paducah, KY, for cross-appellee, Big Kahuna, Inc.

Before ABRAMSON and DIXON, Judges; HENRY,[1] Senior Judge.

## OPINION

DIXON, Judge.

Appellant/Cross–Appellee, Colleen Jackson, appeals from an order and judgment of the McCracken Circuit Court awarding her $310,000 in compensatory damages against Appellee, Justin Duncan; $504,000 in compensatory and $350,000 in punitive damages against Appellee/Cross–Appellant, Sweet & Sassy d/b/a/ Ginger & Pickles; and $150,000 in punitive damages against Appellee/Cross–Appellant, William Tullar, Jr. We conclude that the trial court erred in both the apportionment of fault and the award of punitive damages. Thus, while we affirm the amount of compensatory damages awarded to Jackson, we remand this matter to the circuit court for further proceedings consistent with this opinion.

This case stems from a single car accident that occurred during the early morning hours of May 24, 2001, in Paducah, Kentucky. Justin Duncan was driving his 1990 Chevrolet pickup truck with passenger Colleen Jackson when he veered from the roadway and struck a tree. Both Duncan and Jackson had been drinking prior to the accident. In fact, the pair drank several beers at the Kountry Kastle restaurant before going to the Big Kahuna nightclub where they consumed more alcohol. Duncan and Jackson then went to Ginger & Pickles nightclub where they drank several more beers as well as shared a "pickle bowl," a concoction made from pure grain alcohol and Kool–Aid. It was after leaving Ginger & Pickles around 2:30 a.m. that the accident occurred.

In May 2002, Jackson filed a negligence action in the McCracken Circuit Court against Duncan, Sweet & Sassy, Inc. d/b/a Ginger & Pickles, and the Big Kahuna, Inc. The trial court subsequently granted Jackson's motion to amend the complaint to name her insurer, Progressive Halcyon Insurance Co., as well as Ginger & Pickles' owner William Tullar, Jr., and Big Kahuna shareholders Scott Heidelberg, Bert Bridgewater, and Phillip Jackson as party defendants[2] Shortly before trial, Jackson settled with the Big Kahuna and its shareholders. Those claims were dismissed with prejudice.

In October 2004, the case proceeded to trial against Duncan, Sweet & Sassy, and Tullar. At the close of proof, the jury was instructed to determine whether Duncan, the Big Kahuna, and/or Sweet & Sassy had acted negligently toward Jackson on the

---

1. Senior Judge Michael L. Henry, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Jackson's claims against her insurer were later bifurcated and held in abeyance.

date of the accident, as well as to determine whether Jackson had exercised ordinary care for her own safety. The jury was given a damages instruction and an instruction containing a four-way apportionment of fault between Jackson, Duncan, the Big Kahuna and Sweet & Sassy.

The jury found negligence on the part of all three defendants and a failure to exercise ordinary care by Jackson. Using the four-way apportionment instruction, the jury assessed 10% of the fault to Jackson, 20% to Duncan, and 35% each to the Big Kahuna and to Sweet & Sassy. The jury further determined that Jackson had suffered compensatory damages in the amount of $1,600,000.

After returning their verdict on compensatory damages, the jury was instructed to determine the appropriateness of punitive damages against Duncan, Sweet & Sassy, and Tullar. The jury found all three to have been grossly negligent, but only assessed punitive damages against Sweet & Sassy in the amount of $350,000, and Tullar in the amount of $150,000. The jury did not impose punitive damages upon Duncan. The trial court thereafter entered judgment accordingly.

Following the trial court's denial of her motion for a new trial, Jackson appealed to this Court naming Duncan, Sweet & Sassy, and Tullar as Appellees. Sweet & Sassy and Tullar filed a cross-appeal naming Jackson and the Big Kahuna.[3]

On appeal, all parties challenge the trial court's apportionment of fault. Jackson argues that the apportionment instruction given to the jury was correct, but that the trial court failed to properly follow KRS 413.241 after the jury rendered its verdict. Essentially, it is Jackson's position that

because the statute declares the tortfeasor to be primarily liable, once the jury apportioned liability among all three defendants, the trial court should have deducted Jackson's percentage of fault, i.e., 10%, from the total liability, and thereafter imposed the remainder upon Duncan. As such, Jackson contends that regardless of how the jury apportioned fault, the trial court's judgment should have imposed 90% of the liability upon Duncan. Jackson then argues that Sweet & Sassy should be vicariously liable for all damages that Duncan cannot pay.

In contrast, Sweet & Sassy and Tullar argue that the apportionment instruction was, in fact, improper and in violation of statutory and case law. We note that the Big Kahuna, who settled prior to trial but is a cross-appellee herein, agrees that the apportionment instruction was erroneous in that it should not have included either dram shop.

KRS 413.241, enacted in 1988 and commonly referred to as the Dram Shop Act, provides:

(1) The General Assembly finds and declares that the consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person.

(2) Any other law to the contrary notwithstanding, no person holding a permit under KRS 243.030, 243.040, 243.050, nor any agent, servant, or employee of the person, who sells or serves intoxicating beverages to a person over the age for the lawful purchase thereof, shall be liable to that person or to any other person or to the estate, successors,

---

**3.** The Big Kahuna sought dismissal from the appeal on the grounds that it had settled with Jackson prior to trial and thus was not involved in the pre-trial or trial rulings at issue in this appeal. Its motion was denied by order of this Court dated August 8, 2005.

or survivors of either for any injury suffered off the premises including but not limited to wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served, unless a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving.

(3) The intoxicated person shall be primarily liable with respect to injuries suffered by third persons.

(4) The limitation of liability provided by this section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol.

(5) This section shall not apply to civil actions filed prior to July 15, 1988.

■ In *DeStock No. 14, Inc. v. Logsdon,* 993 S.W.2d 952 (Ky.1999), the Kentucky Supreme Court examined the language of KRS 413.241 and concluded that liability may be imposed upon a dram shop despite the statute's express declaration that a dram shop's actions cannot, as a matter of law, be considered the proximate cause of any injury inflicted by an intoxicated person. *Id.* at 957. Under this liability without-out causation scheme, liability is imputed to the dram shop for injuries to a third person if the dram shop's employees sold or served intoxicating beverages to a person when a reasonable person under the same or similar circumstances would know that he is already intoxicated. If the reasonable person test under KRS 413.241(2) is met, the sale or service can be considered a substantial factor in the accident. *See Sixty–Eight Liquors, Inc. v. Colvin,* 118 S.W.3d 171, 174 (Ky.2003).

■ *DeStock* enunciated several notable distinctions between the statutory treatment of the intoxicated tortfeasor and the dram shop. First, the actions of the intoxicated tortfeasor, and not the dram shop's service of alcohol, are the proximate cause of injury. Second, the tortfeasor remains primarily liable for injuries while the dram shop is secondarily liable with a right of indemnity against the tortfeasor. Finally, the dram shop and the tortfeasor are not concurrently negligent, but instead have committed two separate and independently tortious acts. Liability is imposed on the intoxicated tortfeasor for his actions in injuring the plaintiff, while liability is imposed upon the dram shop for the entirely separate and "independently negligent" act of serving alcohol to the intoxicated tortfeasor before the accident. *DeStock, supra,* at 959. Thus, since the actions of the dram shop and the intoxicated tortfeasor are separate, the two "ought [not] to be considered in pari delicto." *Id.* at 957.

It is because of these distinctions between the tortfeasor and the dram shop, that apportionment of fault between the injured party, the tortfeasor, and the dram shop is improper. The Supreme Court recognized as much, explaining:

Logsdon argues that KRS 411.182(1) requires apportionment in "all tort actions." However, KRS 411.182(2) and (3) and *Hilen v. Hays,* [673 S.W.2d 713, 720 (Ky.1984) ], also specify that damages must be apportioned according to the parties' respective percentages of fault, which are determined by considering "both the nature of the conduct of each party and the *causal relation between the conduct and the damages claimed.*" (Emphasis added) Absent causation, there can be no comparative fault.

. . .

Since it has been legislatively determined in KRS 413.241(1) that DeStock's

negligence did not proximately cause Reid's and Alvey's injuries, comparative fault and apportionment are inapplicable to a determination of DeStock's liability. As far as Reid and Alvey are concerned, KRS 413.241(2) imputes Logsdon's liability to DeStock and recovery can be had against either or both. However, as between Logsdon and DeStock, KRS 413.241(3) declares Logsdon to be primarily liable and DeStock only secondarily liable, which entitles DeStock to the remedy of indemnity.

*DeStock, supra,* at 958.

■ In the case herein, the improper apportionment instruction provided as follows:

### INSTRUCTION 8

You must determine from the evidence what percentage of the total fault was attributable to each party at fault.

In determining the percentage of fault, you should consider both the nature of the conduct of each party at fault and the extent of the causal relation between his or her conduct and the damages claimed.

| | |
|---|---|
| _____ | Justin Duncan |
| _____ | Colleen Jackson |
| _____ | Sweet & Sassy, Inc., d/b/a Ginger & Pickles |
| _____ | Big Kahuna, Inc. |
| TOTAL _____ | |
| 100% | |

As a result of the four-way apportionment, Sweet & Sassy and the Big Kahuna were erroneously assigned a percentage of primary fault independent of the fault of Duncan. As such, the instruction violated the mandates of both KRS 413.241 and the *DeStock* decision.

The instruction should have required the jury to apportion fault between just Dun-

can and Jackson. Then, only after the jury found Duncan to have some percentage of fault, should the jury have determined whether the elements under KRS 413.241 were satisfied such that either or both dram shops could be held secondarily liable.

We are cognizant of the fact that the question of how secondary liability under KRS 413.241 is to be allocated among multiple dram shops is one of first impression in this Commonwealth. Indeed, the statute is silent on the issue and such a fact situation has not been addressed by Kentucky Courts. As such, we turn to the common law rules of apportioning fault.

■ The liability of joint tortfeasors is "no longer joint and several, but is several only." *Degener v. Hall Contracting Corporation,* 27 S.W.3d 775, 779 (Ky.2000); KRS 411.182. Thus, "because the liability is several as to each tortfeasor, it is necessary to apportion a specific share of the total liability to each of them, . . . and the several liability of each joint tortfeasor with respect to the judgment is limited by the extent of his/her fault." *Degener, supra.*

■ As previously discussed, apportionment between the intoxicated tortfeasor and the dram shop is improper because the actions that give rise to liability—directly causing injury and improperly serving alcohol to someone who later causes injury, respectively—do not constitute concurrently negligent acts. Rather, they are separate and independent actions of two fundamentally different characters. The intoxicated tortfeasor's conduct proximately caused injury to the plaintiff, while the dram shop's actions did not. KRS 413.241(1). As observed in *DeStock,* "[a]bsent causation, there can be no comparative fault." *DeStock, supra,* at 958. And the intoxicated tortfeasor is primarily lia-

ble while the dram shop is only secondarily liable with a right of indemnity against the tortfeasor. *Id.* at 957.

 However, no such differences exist between two dram shops. Multiple dram shops that violate KRS 413.241 would have committed similar acts that would have had a similar relationship to a plaintiff's ultimate injury. In light of this similarity of circumstance and character, liability among multiple dram shops is properly apportioned under comparative fault principles.

Thus, we conclude that *DeStock* only prohibits apportionment between the intoxicated tortfeasor and the dram shop. It does not prevent apportionment between the dram shops themselves. Accordingly, once a jury determines that the elements under KRS 413.241 are satisfied such that either or both dram shops could be held secondarily liable, the jury should be instructed to apportion that liability between them based on the evidence presented. Specifically, the jury should be instructed to determine to what degree the sale or service of alcohol by each dram shop was a substantial factor in causing the tortfeasor's intoxication at the time of the accident. *See DeStock, supra,* at 960; *Sixty–Eight Liquors, Inc. v. Colvin,* 118 S.W.3d at 174.

Both parties next challenge the award of punitive damages. Jackson contends that she is entitled to a new trial solely on punitive damages because of (1) the inadequacy of the award against Tullar, and (2) the improper conduct of an alleged business acquaintance of Tullar during the last stage of the trial. Sweet & Sassy and Tullar, on the other hand, argue that the trial court erred in giving any instruction on punitive damages. Because we conclude that punitive damages cannot be recovered in a dram shop action, we necessarily do not reach the issue of any alleged improper conduct on the part of the business acquaintance.

 Kentucky law is clear that a plaintiff cannot recover punitive damages against a defendant unless that defendant's conduct was the proximate cause of any injury to the plaintiff. *See Fowler v. Mantooth,* 683 S.W.2d 250 (Ky.1984). However, in KRS 413.241(1), the legislature has expressly stated that a dram shop's sale or service of intoxicating beverages cannot be the proximate cause of any injury caused by the intoxicated tortfeasor. *See also DeStock, supra,* at 958. As there can be no punitive damages absent proximate cause, and the legislature has removed proximate cause in this context, punitive damages against a dram shop are unavailable as a matter of law.

We believe such a determination is consistent with the plain language of the statute. The dram shop liability imposed in KRS 413.241(2) is set forth in the context of "injuries suffered" by a third person. The term "injuries suffered" indicates damages or injuries actually incurred by a party. To "suffer" is defined as "to submit to or endure death, affliction, penalty, or pain or distress; to sustain loss or damage." WEBSTER'S THIRD NEW INT'L DICTIONARY 2284 (1981). Therefore, the term "suffer" refers to one acted upon as distinguished from the one acting. *Id.*

 This distinction is significant because the recovery of damages and recovery for injuries are two separate concepts. While recovery of "damages" could arguably include punitive damages, recovery for "injuries suffered" clearly does not. A plaintiff is compensated for injuries through actual, or compensatory damages. *Kentucky Central Insurance Co. v. Schneider,* 15 S.W.3d 373 (Ky.2000). As the name implies, actual or compensatory damages seek to make the plaintiff whole

by awarding an amount of money designed to equal the wrong done by the defendant. Punitive damages, in contrast, do not compensate for injuries, but rather serve "to punish or deter a person, and others, from committing such acts in the future." *Burgess v. Taylor*, 44 S.W.3d 806, 814 (Ky. App.2001); KRS 411.184(1)(f). Accordingly, punitive damages have no relation to compensating a plaintiff for injury, but instead exist as a punishment for the wrongdoer. KRS 413.241's focus on dram shop liability for "injuries suffered" indicates that the legislature did not intend for a dram shop to be liable for an award of punitive damages.

In determining whether punitive damages are authorized by a particular statute, Kentucky courts have applied a strict, literal interpretation of the relevant statutory language. *Kentucky Department of Corrections v. McCullough*, 123 S.W.3d 130 (Ky.2003). In *Stewart v. Estate of Cooper*, 102 S.W.3d 913 (Ky.2003), our Supreme Court held that a plaintiff could not recover punitive damages from the estate of an intoxicated driver because the punitive damages statute allows recovery only when the plaintiff has proven "that *the defendant from whom such damages are sought* acted toward the plaintiff with oppression, fraud or malice." *Id.* at 915 (*Quoting* KRS 411.184(2). (emphasis added)). Because the defendant from whom the punitive damages were sought was the tortfeasor's estate, and the estate itself had not acted toward the plaintiff with the required "oppression fraud, or malice," the court determined that punitive damages were unavailable. *Stewart, supra* at 916.

We would note that both the Dram Shop Act, KRS 413.241, and the punitive damages statute, KRS 411.184, were debated and adopted during the same legislative session and became effective on the same day. As such, it is reasonable to infer that the General Assembly was aware of the state's punitive damages scheme when it enacted KRS 413.241. Notwithstanding, had the legislature intended for KRS 413.241 to impose liability upon dram shops for punitive damages it certainly could have stated so in the statute. Indeed,

> [T]he General Assembly has enacted a number of statutes that expressly provide for punitive damages as a remedy for violation of the statute.... The express inclusion of punitive damages in these statutes is redundant and unnecessary if KRS 411.184 and KRS 411.186 created the right to punitive damages in all cases where the statutory elements for punitive damages are present. Such a result violates the "universal rule ... that in construing statutes it must be presumed that the Legislature intended *something* by what it attempted to do." *Reyes v. Hardin Co.*, 55 S.W.3d 337, 342 (Ky.2001) (Emphasis in original).

*McCullough, supra*, at 140. Thus, considering the plain meaning of the words used and the purposes behind compensatory and punitive damages, we believe that the inclusion of the term "injuries suffered" shows legislative intent that dram shop liability extend only to compensatory damages. *See Steak & Ale of Texas, Inc. v. Borneman*, 62 S.W.3d 898 (Tex.App.2001).

Our decision on this issue should not be construed in any way to speak to the manner in which Tullar and Sweet & Sassy conducted business. It is obvious from a cursory reading of the evidence herein, that their business practices were abhorrent at best. Nevertheless, if a plaintiff's cause of action is one for which punitive damages is not an available remedy, it does not matter how the defendant may have acted. It is within the province of the legislature, and not this Court, to specify the statutory remedy. And regardless of how appropriate the defendants' conduct

might be for a punitive damages award, such is simply not available.

Finally, Sweet & Sassy and Tullar argue on cross-appeal that the trial court erred in awarding 12 % interest to Jackson from the date of the jury verdict rather than from the date judgment was entered. We agree.

Pursuant to KRS 360.040, the statutory rate of interest begins to run from the date of entry of the judgment. Jackson contends that once the verdict was returned, her claims were liquidated and easily identifiable. However, damages that were established by proof offered during the trial are unliquidated and not subject to prejudgment interest. *See Atlantic Painting & Contracting Inc. v. Nashville Bridge Company*, 670 S.W.2d 841, 847 (Ky. 1984). *See also BLACK'S LAW DICTIONARY* (7th Ed.1999) ("Unliquidated Damages" are "Damages that have been established by a verdict or award but cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury."). Thus, on remand, the trial court shall award interest on the compensatory damages in accordance with KRS 360.040, from the date of entry of the new judgment.[4]

Accordingly, the judgment of the McCracken Circuit Court is affirmed as to the amount of compensatory damages and reversed as to the punitive damage award. Further, this matter is remanded for a new trial on the issue of apportionment of damages between the parties.

ALL CONCUR.

---

4. While we find no error in the amount of compensatory damages, the jury must resolve the issue of apportionment before any defendant is responsible for payment of its percentage of the award. Thus, interest can only be awarded from the date of the new judgment rather than from the original judgment.