RENDERED: MARCH 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0136-MR

STACI L. OBERST                                        APPELLANT

|  | APPEAL FROM BOONE CIRCUIT COURT |
|---|---|
| v. | HONORABLE JAMES R. SCHRAND, JUDGE |
|  | ACTION NO. 10-CI-02664 |

DANNY J. MOUNTS                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: GOODWINE, TAYLOR, AND K. THOMPSON, JUDGES.

TAYLOR, JUDGE: Staci L. Oberst appeals from the Boone Circuit Court's

October 11, 2018, Judgment awarding damages to her arising from injuries

suffered in an automobile accident on or about September 3, 2010.[1] Oberst

---

[1] On January 3, 2019, the trial court entered an Order denying Staci L. Oberst's Motion requesting a new trial, pursuant to Kentucky Rules of Civil Procedure (CR) 59.01 and alternative motion to alter or amend the court's judgment pursuant to CR 59.05.

suffered significant injuries in a single-vehicle accident which occurred when she was a passenger in a vehicle driven by the appellee, Danny J. Mounts, while he was under the influence of alcohol. After a thorough review of the record, we affirm.

## BACKGROUND

The facts of this case are largely undisputed. On September 2, 2010, Oberst and Mounts went out on a first date together. They began the evening when Mounts picked Oberst up in his truck. The two ate dinner at the Mai Thai restaurant in Florence, Kentucky, where they each had two beers. Afterward, the parties went to a tavern named "Buffalo Bob's." Over the course of about two hours at the tavern, Mounts drank approximately five or six beers and a shot of an alcoholic beverage, and Oberst drank between three and four beers and a shot. Mounts then drove the pair to Woodie's tavern, where they drank significant additional quantities of alcoholic beverages. Upon leaving Woodie's, Oberst drove the couple to a third tavern, Muggbee's. They then returned to Woodie's to finish the evening. Oberst testified that she and Mounts both had slurred speech by this time. Oberst further admitted to her earlier deposition testimony that both she and Mounts were too intoxicated to be driving.

Oberst and Mounts left Woodie's at about 2:00 a.m., around the time of the tavern's closing. Mounts was driving the truck. In the process of attempting

to exit I-75, Mounts lost control of the vehicle and crashed into a guardrail on the exit ramp. Police investigating the incident found Mounts had a blood alcohol concentration of 0.198 grams per hundred milliliters, more than twice the legal limit of intoxication while driving.[2] As a result of this incident, Mounts was charged and convicted of aggravated driving under the influence of alcohol.

The crash had severe physical consequences for Oberst because the impact partially ejected her from the vehicle. She suffered multiple injuries, including compound fractures to her left arm, a broken right wrist, a degloved upper right arm,[3] fractured vertebrae in her upper back, a collapsed lung, and a punctured spleen. Oberst spent fifteen days in the University of Cincinnati Medical Center being treated for her injuries. She then spent one and one-half months in a nursing home for wound care and one month in a physical rehabilitation facility.

On October 18, 2010, Oberst filed a complaint against Mounts in Boone Circuit Court, alleging Mounts caused her personal injury when he negligently operated his motor vehicle while under the influence of alcohol. She

---

[2] *See* Kentucky Revised Statutes (KRS) 189A.005(1) (defining "alcohol concentration") and KRS 189A.010(1)(a) (prohibiting the legal operation of a motor vehicle when the driver has an alcohol concentration of more than 0.08).

[3] A "degloving injury" may be defined as an "[a]vulsion of the skin of [a bodily extremity] in which the part is skeletonized by removal of most or all of the skin and subcutaneous tissue." "Degloving injury," *Farlex Partner Medical Dictionary* (2020).

requested relief in the form of compensation for current and future medical expenses, lost wages, pain and suffering, and punitive damages. Mounts filed a *pro se* answer. Nearly one year after her initial filing, Oberst amended her complaint to add Buffalo Bob's and Woodie's as defendants in the suit, alleging both taverns were negligent in serving alcohol to an "obviously intoxicated patron" and citing Kentucky's Dram Shop Act, Kentucky Revised Statutes (KRS) 413.241. Aside from filing his answer and allowing himself to be deposed, Mounts did not actively participate in the litigation for several years.[4]

On September 3, 2015, Oberst moved for summary judgment against Mounts for liability purposes only, reserving only the issue of damages. On October 16, 2015, the trial court granted the motion against Mounts in a written order, while also noting for the record that Oberst had reached a settlement on her claims against the taverns. The court directed Oberst to move for an evidentiary hearing on her damages. On May 12, 2016, Mounts moved the trial court to set aside the October 16, 2015, order. Kentucky Rules of Civil Procedure (CR) 60.02. The trial court denied his motion.

The record reflects no further action in the case until August 18, 2017, when Oberst moved the court to set the matter for a bench trial on damages. The

---

[4] Attorney William G. Knoebel entered his appearance for Danny J. Mounts on February 19, 2016.

trial court, by Order entered September 15, 2017, directed the parties to file pretrial briefs on the issues of apportionment of liability and comparative fault. Oberst's pretrial brief argued against Mounts receiving any set-off for her damages as a result of payments to her from the taverns, asserting this was not permitted under the Dram Shop Act.[5] She also argued that apportionment of liability between Mounts and the taverns was not permitted under *Jackson v. Tullar*, 285 S.W.3d 290, 296-97 (Ky. App. 2007). Finally, Oberst argued that Mounts should not be permitted to present arguments on the issue of comparative fault because the trial court had already determined Mounts' liability in its previous order granting summary judgment.

On October 31, 2017, the trial court entered an order in which it agreed that apportionment of liability between Mounts and the taverns was not appropriate under the Dram Shop Act. Nonetheless, the trial court ruled Mounts was entitled to a set-off equivalent to the amounts received from the taverns, because "an injured party typically cannot receive more than one recovery as compensation for the same harm or element of loss." Record at 357. The trial court also noted its previous summary judgment order "was meant as an adjudication of the cause of the accident, not an adjudication of any comparative

---

[5] In a two sentence argument in Oberst's pretrial brief, Oberst stated that Mounts was "asserting the defenses of right of indemnity and/or contribution" as "affirmative defenses [that] were not raised in his Answer" to the Complaint and were thus waived. Record at 350.

fault," and it would be proper for Mounts to present a comparative fault defense based on whether Oberst was wearing a seat belt at the time of the crash. Record at 358.[6]

On August 27, 2018, at the bench trial on damages, the trial court heard testimony from Oberst and her mother and received deposition evidence from one of Oberst's physicians, Dr. James Baker. Oberst introduced photographs of her injuries and documentation to support her medical expense claim. According to Oberst's testimony, she had previously incurred medical expenses amounting to $414,785.39, and had recently undergone additional surgery to her shoulder which cost $12,955. Regarding her wages, Oberst testified she previously received, and continues to receive, social security disability benefits amounting to slightly less than $1,000 per month, and Social Security Administration rules allowed her to work and earn approximately $1,000 per month. Oberst testified she earned approximately that much prior to the crash, but she admitted her work history was not consistent and that she was not working at the time of the crash.

On October 11, 2018, the trial court entered its judgment. The trial court ruled Oberst had incurred $427,632.89 in medical expenses, $12,000 in lost wages, and $250,000 in pain and suffering damages. The trial court declined to

---

[6] At trial, the trial court ruled from the bench that Mounts could not raise the issue of whether Oberst was wearing a seatbelt at the time of the accident, presumably because Mounts had not identified an expert witness to testify at trial.

award punitive damages.  In considering the comparative fault of the parties, the trial court allocated 67 percent of the fault attributable to Mounts and 33 percent attributable to Oberst and apportioned damages accordingly.  Finally, the trial court reiterated its previous ruling, ordering that Mounts was entitled to a set-off for any amounts received by Oberst from the taverns who had settled with Oberst prior to trial.  Asserting the award to be inadequate, Oberst subsequently moved the trial court to grant a new trial, or in the alternative, alter or amend the judgment.  The trial court denied the motion by Order entered January 3, 2019.  This appeal followed.

### STANDARD OF REVIEW

As noted, the trial court conducted a bench trial in this action. Accordingly, our review is based upon the clearly erroneous standard set forth in CR 52.01.  CR 52.01 states that "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  A reversible error arises when there is no substantial evidence in the record to support the findings of the trial court.  *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114 (Ky. App. 1998).  Evidence is substantial, when taken alone or in a light of all the evidence, if it has sufficient probative value to induce conviction in the mind of a reasonable person.  *Stanford Health & Rehab. Ctr. v. Brock*, 334 S.W.3d 883 (Ky. App. 2010).  Our review of

the trial court's application of law to the facts is *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001).

## ANALYSIS

Oberst presents four issues on appeal. First, she argues the trial court erroneously considered comparative fault and apportioned damages to her, reducing her damages award. Second, Oberst contends the trial court improperly considered her conduct, including her comparative fault, in declining to award punitive damages to her. Third, Oberst argues the trial court erroneously ruled Mounts' portion of the damages would be subject to a set-off for the amounts she received from the taverns who settled prior to trial. Fourth, Oberst contends the trial court's award of $250,000 for her past, present, and future pain and suffering is against the weight of the evidence. We will consider each argument as presented.

For her first issue, Oberst contends the trial court erroneously considered her comparative fault, which had the effect of reducing her damages. She asserts the summary judgment order entered on October 16, 2015, precluded the court from considering comparative fault because the order held that Mounts was liable for her damages.

As noted previously, the trial court explained in its October 31, 2017, order that the summary judgment order "was meant as an adjudication of the cause

of the accident, not an adjudication of any comparative fault," citing *Geyer v. Mankin*, 984 S.W.2d 104 (Ky. App. 1998). Record at 358. In *Geyer*, this Court reversed and remanded for a new trial, in part because the trial court's grant of partial summary judgment was unclear as to whether it was, in fact, a determination of liability or if "it merely adjudicate[d] the issue of the cause of the accident itself as a matter of law." *Geyer*, 984 S.W.2d at 108.

Based upon our review of *Geyer*, we conclude the trial court in the case *sub judice* committed a similar error in its order as the trial court did in *Geyer*:

> There is a distinction between an "adjudication of facts" by a judge or jury and a "judgment." *See* 7 Bertelsman and Philipps, *Kentucky Practice*, CR 54.01, cmt. 3 at 264 (4th ed. 1984). A judgment adjudicates a claim or claims in a proceeding (CR 54.01), whereas an adjudication of facts determines a factual issue. If the trial court intended the partial summary judgment order to truly be a judgment on the issue of liability, it would have necessarily included a determination that the seatbelt defense was to no avail. If, however, the trial court intended its partial summary judgment order to adjudicate only fault in regard to the accident itself, then it was only an adjudication of facts under CR 56.04 and not a judgment. *See* Bertelsman and Philipps, cmt. 3 at 342. As it was termed a "judgment," we would normally presume that the partial summary judgment adjudicated the issue of liability for Geyer's injuries and that the issue of the seatbelt defense was removed from the case.

*Id*. at 107 n.2.

However, we note that the court's ruling on October 16, 2015, was styled an "Order," not a summary judgment, and was limited to an adjudication of

facts at that time, namely that Mounts was responsible as the driver of the vehicle. More importantly, the October 16, 2015, Order was not a final order or judgment as provided for in CR 54.01. In other words, the order was interlocutory, not final, not appealable, and subject to continuing review or modification by the court during the course of the proceedings. In the trial court's subsequent Order entered on June 9, 2016, the court effectively recognized that KRS 411.182 provided for the application of comparative fault at the damages hearing, which would be addressed prior to trial. The court did just that in its October 31, 2017, Order, entered prior to trial, that provided for comparative fault to be addressed in the final judgment. This ruling was consistent with the long-standing rule that a trial court is at all times charged with the proper application of the law. *Burton v. Foster Wheeler Corp.*, 72 S.W.3d 925, 930 (Ky. 2002).

Unlike the Court in *Geyer*, the trial court in this case made it clear in its subsequent orders that this purported "summary judgment" was actually a partial adjudication of the facts and thus not an actual summary judgment that was a final order under CR 54.01. Therefore, the trial court did not err in considering the comparative fault of the parties at the bench trial on damages; *see* KRS 411.182; *Hilen v. Hays*, 673 S.W.2d 713 (Ky. 1984).[7]

---

[7] Oberst has not challenged on appeal the factual findings made by the trial court upon which the court concluded she had violated her duty of ordinary care that was a substantial factor in causing her injuries. Thus, we have not addressed that issue in this Opinion.

-10-

For her second issue on appeal, Oberst contends the trial court erred in declining to award her punitive damages. Oberst argues "there are countless decisions . . . which not only support but mandate a substantial award of punitive damages here." Appellant's Brief at 17. However, this bald assertion finds no support in our law. "The jury's decision as to whether to award punitive damages remains discretionary because the nature of punitive damages is such that the decision is always a matter within the jury's discretion." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993). "It is the general rule of this Commonwealth that punitive damages are not recoverable as a matter of right and that the award of such damages rests within the discretion of the jury." *Moore v. Bothe*, 479 S.W.2d 634, 635 (Ky. 1972). Here, the trial court, acting as the trier of fact at the bench trial, declined in its discretion to award punitive damages, and we will not second guess the trial court's discretion on this issue.

For her third issue on appeal, Oberst argues the trial court erroneously ruled Mounts' portion of the damages would be subject to a set-off for the amounts she received from the two taverns that settled before trial. Oberst contends Mounts failed to plead a defense of credit or set-off in his answer as required by CR 8.03. She also argues the Dram Shop Act, KRS 413.241, precludes apportionment and set-off of the damages award between Mounts and the taverns who settled with Oberst.

-11-

We need not consider the first part of Oberst's argument regarding the failure to plead set-off as an affirmative defense under CR 8.03, because it appears Oberst did not make this argument to the trial court prior to or during the trial. Oberst did not raise the issue until filing her combined postjudgment motion for new trial under CR 59.01, or alternatively, to alter or amend the judgment under CR 59.05. Likewise, Oberst's brief fails to provide a preservation statement in the "arguments" section of her appellant's brief, showing where this issue was preserved below, which is required under CR 76.12(4)(c)(v). The point of the preservation statement "is not so much to ensure that opposing counsel can find the point at which the argument is preserved, it is so that we, the reviewing Court, can be confident the issue was properly presented to the trial court and therefore, is appropriate for our consideration." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012).

Notwithstanding, this Court has thoroughly scoured the record below and cannot find that Oberst presented any argument under CR 8.03 to the trial court regarding the waiver of Mounts' set-off defense. In the trial court's order entered October 31, 2017, the court explicitly stated that Oberst was not entitled to collect a full award of damages from both the taverns and Mounts, thus, indicating that Mounts would be entitled to a set-off for the taverns' settlements in any judgment rendered for damages against him. Oberst's pretrial brief filed on

-12-

August 21, 2018, did not reference any waiver argument under CR 8.03 regarding Mounts' set-off claim. During the bench trial, Oberst did not raise the CR 8.03 issue, although during a bench conference at the end of the trial, the court noted that the parties could address the set-off argument in their posttrial briefs. Yet in Oberst's posttrial memorandum, she did not even reference the set-off issue nor present any waiver argument under CR 8.03.

Based on our exhaustive review of the record below, Oberst failed to bring any issue under CR 8.03 to the trial court's attention, either prior to or during the trial. Accordingly, this issue was not properly preserved for appellate review. *See Am. Founders Bank, Inc. v. Moden Invs., LLC*, 432 S.W.3d 715, 722-24 (Ky. App. 2014). Additionally, a party may not invoke CR 59.05 to raise arguments for the first time and to introduce evidence that should have been presented during the proceedings before the entry of the judgment. *Gullion v. Gullion*, 163 S.W.3d 888, 893 (Ky. 2005). Accordingly, we will not consider Oberst's argument regarding whether Mounts waived a set-off defense for failure to comply with CR 8.03.

For the next part of her argument on set-off, Oberst contends it was error for the trial court to allow a set-off of Mounts' damages based on the amounts Oberst received from the settlement with the taverns, asserting such a set-off is not

authorized by the Dram Shop Act.[8] KRS 413.241(3) states that "[t]he intoxicated person shall be primarily liable to injuries suffered by third persons[,]" but KRS 413.241(2) states that dram shops may also be liable "if a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving."

In analyzing KRS 413.241, the Supreme Court of Kentucky has held that an intoxicated person is not *in pari delicto* with a dram shop that is also liable in a tort suit. *DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952, 958 (Ky. 1999). Instead, the intoxicated person is primarily liable for damages, and the dram shop is secondarily liable for those damages but with a right of indemnity against the intoxicated person. *Id.* This Court considered the effect of *DeStock* in *Jackson*, 285 S.W.3d at 296-98, and determined that this secondary liability made it erroneous to apportion liability between dram shops and the other tortfeasor(s) in the action. Instead, pursuant to *Jackson*, the proper course of action is to ask the factfinder to apportion fault between the intoxicated driver and the passenger; then, if the factfinder found the intoxicated driver to have some percentage of fault, the

---

[8] In *Taylor v. King*, 345 S.W.3d 237 (Ky. App. 2010), this Court held that one provision of the Dram Shop Act, KRS 413.241(1), was unconstitutional to the extent that it established a standard of proximate cause or prohibited punitive damages against a dram shop. *Id.* at 244. These provisions are not directly relevant to our analysis herein.

factfinder should determine whether the dram shops may be held secondarily liable under KRS 413.241. *Jackson*, 285 S.W.3d at 296.

Most significantly, there is nothing in the Dram Shop Act or in the case law analyzing it which alters long-standing tort principles that preclude a double recovery by an injured party:

> A general goal of compensatory damages in tort cases is to put the victim in the same position he would have been prior to the injury or make him whole to the extent that it is possible to measure his injury in terms of money. As a result, an injured party typically cannot receive more than one recovery as compensation for the same harm or element of loss.

*Schwartz v. Hasty*, 175 S.W.3d 621, 625 (Ky. App. 2005) (citations omitted). The collateral source rule is an exception to this principle; however, the trial court below stated this rule was not applicable, and the parties have not argued on appeal that it should apply here. Instead, *Jackson* and *DeStock* both outline a scheme whereby an injured party receives only one recovery for his or her injuries from an intoxicated driver or liable dram shops; in turn, the dram shops may seek indemnity for their payments from the intoxicated driver who caused those injuries. *DeStock*, 993 S.W.2d at 959; *Jackson*, 285 S.W.3d at 296-97.

Based on these principles, the trial court did not err in finding that any amounts owed by Mounts should be subject to a set-off for settlement payments made by the taverns in order to prevent a double recovery. We note here that

Mounts has not escaped responsibility; he is still the primarily liable party, and legal precedents permit the taverns to seek indemnity for their payments against him, up to the limit of his apportioned liability.

In her fourth and final issue on appeal, Oberst contends the trial court's award of $250,000 for her past, present, and future pain and suffering is against the weight of the evidence. "Whether an award represents excessive or inadequate damages turns on the nature of the underlying evidence." *May v. Holzknecht*, 320 S.W.3d 123, 128 (Ky. App. 2010). However, as previously noted, in a bench trial, "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01.

Oberst argues the inadequacy of her award by citing other cases where the plaintiff received a higher amount for pain and suffering. However, "[t]he adequacy and inadequacy of damages cannot be measured properly from adjudicated cases, nor can any general rule on the subject be laid down." *Koch v. Stone*, 332 S.W.2d 529, 532 (Ky. 1960). In addition, pain and suffering damages are not required in every case, let alone mandated at a particular minimum threshold. "[T]he law in Kentucky . . . does not require a jury to award damages for pain and suffering in every case in which it awards medical expenses." *Bayless v. Boyer*, 180 S.W.3d 439, 444 (Ky. 2005) (quoting *Miller v. Swift*, 42 S.W.3d 599,

-16-

601 (Ky. 2001)).  In this case, the trial court was the trier of fact, and there is no dispute that Oberst suffered substantial pain and suffering.  However, we can find no error in the trial court's findings nor its application of the law to those findings in its award of damages.  Thus, it would not be proper for this Court to substitute its judgment for that of the trial court on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Boone Circuit Court.

GOODWINE, JUDGE, CONCURS.

THOMPSON, K., CONCURS IN RESULT ONLY.

BRIEF FOR APPELLANT:

Gregory W. McDowell
Florence, Kentucky

BRIEF FOR APPELLEE:

William G. Knoebel
Florence, Kentucky