**Tim TAYLOR, as Administrator of the Estate of Christina Vertz, Deceased; Paducah Bank & Trust by and through Melanie McNeill, as Conservator and Next Friend of Michelle Blanco, a Minor; Paducah Bank & Trust by and through Melanie**

McNeill, as Conservator and Next Friend of Lorine Randall, a Minor; Paducah Bank & Trust by and through Melanie McNeill, as Conservator and Next Friend of Emily Blanco, a Minor; and Paducah Bank & Trust by and through Melanie McNeill, as Conservator and Next Friend of Angelina Vertz, a Minor, Appellants,

v.

Daniel KING; and Skyline Motel II Corp., Appellees.

No. 2009–CA–001599–MR.

Court of Appeals of Kentucky.

Oct. 1, 2010.

David V. Oakes (argued), Paducah, KY, for Appellant.

Michael S. Vitale (argued), Bowling Green, KY, for Appellee.

Before MOORE and WINE, Judges; HARRIS,[1] Senior Judge.

## OPINION

WINE, Judge:

Tim Taylor, Administrator for the Estate of Christina Vertz, and others claiming as survivors of Christina Vertz (collectively, "the Estate"), appeal from a declaratory judgment finding that the Dram Shop Act, Kentucky Revised Statute ("KRS") 413.241 ("the Act"), prohibits recovery of punitive damages. The

Estate argues that this interpretation of the Act is erroneous, or, in the alternative, that the Act may not be constitutionally interpreted to prohibit recovery of punitive damages against a dram shop. We conclude that the prior interpretations of the Act are consistent with the clear language of the statute. However, we further find that the Act's implicit prohibition on recovery of punitive damages violates the jural rights and separation-of-powers provisions of the Kentucky Constitution. Therefore, we hold that the Dram Shop Act is unconstitutional to the extent that it prohibits recovery of punitive damages, and we remand this matter for further proceedings on the merits of that claim.

For purposes of this appeal, the following facts are not in dispute. On February 3, 2007, Daniel King went to the Legends Bar in Hopkinsville, Kentucky. The Legends Bar is owned and operated by Skyline Motel II Corporation ("Skyline"). While King was at Legends, the bartender served him a large quantity of alcohol. Shortly after leaving Legends, King's vehicle crossed into the opposing lane of traffic and collided with a car driven by Christina Vertz ("Vertz"). Vertz was killed in the collision, and a passenger in Vertz's car, Tammy Lamar, was severely injured.

Vertz's Estate filed a negligence claim against King and Skyline. With respect to Skyline, the Estate alleged that Skyline's employees were grossly negligent or reckless in serving alcohol to King. The Estate asserts that the bartender at Legends knew that King was a habitual drinker who had been arrested and convicted of crimes arising out of alcohol abuse. The Estate also alleges that the bartender knew that King intended to leave the bar after drinking and drive back home to

---

**1.** Senior Judge William R. Harris sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Clarksville, Tennessee. Nevertheless, the bartender served King four 22–ounce glasses of beer, one 10–ounce glass of beer, and four mixed drinks over a three-hour period. The Estate contends that Skyline's conduct was grossly negligent and reckless, subjecting it to liability for compensatory and punitive damages.

During the course of the litigation, the Estate filed a motion for declaratory relief pursuant to KRS 418.040. The Estate sought a declaration that the Kentucky Dram Shop Act, KRS 413.241, is unconstitutional to the extent that it prohibits recovery of punitive damages against a seller or provider of alcohol. After reviewing the recent opinion by this Court in *Jackson v. Tullar*, 285 S.W.3d 290 (Ky.App. 2007), the trial court denied the Estate's motion for declaratory relief and dismissed its claim for punitive damages. Subsequently, the trial court amended its order to clarify that the Estate may still recover punitive damages against King, but not against Skyline. This appeal followed.

This case presents two separate but related issues. First, the Estate argues that this Court erroneously held in *Jackson v. Tullar, supra*, that punitive damages may not be recovered for a claim under KRS 413.241. And second, the Estate maintains that KRS 413.241 violates the Kentucky Constitution in several respects. In order to properly address these issues, we must briefly discuss the development of the common law with respect to dram shop liability, as well as the enactment and interpretation of the Dram Shop Act.

Prior to 1987, the common-law in Kentucky generally provided that a vendor of intoxicating liquors was not answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor. But as a practical matter, this did not result in a blanket rule of non-liability for

a tavern owner who illegally sells alcohol in Kentucky. Rather, liability could be imposed on a dram shop for the sale of provision of alcohol based upon a breach of a specific statutory duty. *See Britton's Adm'r v. Samuels*, 143 Ky. 129, 136 S.W. 143 (1911), involving sale of alcohol in a prohibition territory; and *Nally v. Blandford*, 291 S.W.2d 832 (Ky.1956), involving sale to an intoxicated person or sale of liquor in a local option territory. However, these cases made clear that liability was based on the dram shop's own negligent actions, rather than a vicarious liability for the actions of the intoxicated person. *Britton's Adm'r, supra* at 143, *Nally, supra* at 835.

In *Pike v. George*, 434 S.W.2d 626 (Ky. 1968), the former Court of Appeals extended this rule to allow recovery for injuries suffered by a third party as a result of an unlawful sale of alcohol to a minor. Nevertheless, the Court noted the general rule that, ordinarily, a vendor of intoxicating liquors is not answerable to a third person for injury or damage sustained by the latter as a result of the intoxication of the purchaser of the liquor. The Court in *Pike* did not address whether liability was based upon the dram shop's own negligence or the negligence of the intoxicated tortfeasor. Rather, the Court emphasized that liability is imposed based upon reasonably foreseeable consequences arising from the vendor's wrongful or unlawful act in selling the alcohol. *Id.* at 628–29.

Finally, the Kentucky Supreme Court revisited the issue of dram shop liability in *Grayson Fraternal Order of Eagles, Aerie No. 3738, Inc. v. Claywell*, 736 S.W.2d 328 (Ky.1987). In *Grayson*, the Supreme Court recognized the common-law rule that "no cause of action existed against one furnishing liquor in favor of those injured by the intoxication of the person so furnished." *Id.* at 330. However, the Court

also noted the developing common-law position imposing liability for breach of a statutory duty. The Court further extended the right of recovery, allowing a third party to recover against a dram shop for breach of a common-law duty of care. *Id.* at 334–35. However, the Court in *Grayson* did not discuss the nature of such liability beyond the application of general negligence principles.

In response to *Grayson*, the General Assembly enacted KRS 413.241, which provides as follows:

(1) The General Assembly finds and declares that the consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person.

(2) Any other law to the contrary notwithstanding, no person holding a permit under KRS 243.030, 243.040, 243.050, nor any agent, servant, or employee of the person, who sells or serves intoxicating beverages to a person over the age for the lawful purchase thereof, shall be liable to that person or to any other person or to the estate, successors, or survivors of either for any injury suffered off the premises including but not limited to wrongful death and property damage, because of the intoxication of the person to whom the intoxicating beverages were sold or served, unless a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving.

(3) The intoxicated person shall be primarily liable with respect to injuries suffered by third persons.

(4) The limitation of liability provided by this section shall not apply to any person who causes or contributes to the consumption of alcoholic beverages by force or by falsely representing that a beverage contains no alcohol.

(5) This section shall not apply to civil actions filed prior to July 15, 1988.

After the enactment of KRS 413.241, the Kentucky Supreme Court addressed the application of the Dram Shop Act in *DeStock No. 14, Inc. v. Logsdon*, 993 S.W.2d 952 (Ky.1999). In that case, the Kentucky Supreme Court examined the language of KRS 413.241 and concluded that liability may be imposed upon a dram shop despite the statute's express declaration that a dram shop's actions cannot, as a matter of law, be considered the proximate cause of any injury inflicted by an intoxicated person. *Id.* at 957. Under this liability-without-causation scheme, the dram shop's liability is based upon its own negligence if it sold or served intoxicating beverages to a person when a reasonable person under the same or similar circumstances would know that he is already intoxicated. However, causation for the third party's damages is imputed based upon the liability of the intoxicated tortfeasor. Furthermore, the Court further found that the statute creates a priority of liability by holding the consuming party primarily liable, and the dram shop secondarily liable with regard to indemnity. *Id.* See also *Sixty–Eight Liquors, Inc. v. Colvin*, 118 S.W.3d 171, 174 (Ky.2003).

However, *DeStock* did not address whether punitive damages could be recovered against a dram shop for a claim under the Act. That issue remained unresolved until the recent decision in *Jackson v. Tullar, supra,* in which this Court addressed, among other things, whether punitive damages may be awarded against a dram shop for a violation of KRS 413.241. This Court first noted that a plaintiff cannot recover punitive damages against a defendant unless that defendant's conduct was

the proximate cause of any injury to the plaintiff. *Id.* at 297, *citing Fowler v. Mantooth*, 683 S.W.2d 250 (Ky.1984). However, KRS 413.241(1) expressly precludes a finding that the actions of the dram shop were the proximate cause of the injury to the third party. The Court went on to note that the General Assembly provided that a dram shop may be liable for compensatory damages without proximate causation, but it did not specifically allow for recovery of punitive damages. Consequently, the Court concluded that punitive damages are not available under the Dram Shop Act. *Jackson, supra,* at 297–98.

■ The Estate first argues that this Court should revisit the holding in *Jackson v. Tullar.* But in order to overrule Jackson, this Court would have to go *en banc.* SCR 1.030(7)(d). Moreover, *Jackson v. Tullar* was expressly based upon the Kentucky Supreme Court's interpretation of KRS 413.241 in *DeStock*, holding that punitive damages have never been recoverable without a finding of proximate cause. The legislature has expressly precluded such a finding and failed to separately provide for an award of punitive damages under the Act. Thus, under the statutory scheme as interpreted by Kentucky's highest Court, punitive damages cannot be awarded under the Dram Shop Act. Consequently, there is no reason to revisit the holding of *Jackson v. Tullar.*

The Estate next raises a multi-pronged challenge to the constitutionality of KRS 413.241. Since there are no cases addressing the constitutionality of the Act, this is an issue of first impression.

■ The Estate primarily argues that the Act violates the jural rights doctrine. The jural rights doctrine is not expressly set out in the Kentucky Constitution. Rather, Kentucky courts have held that it flows from a reading of Subsections 14,[2] 54,[3] and 241.[4] In essence, the doctrine states that the General Assembly has no authority to abolish or restrict a common law right of recovery for personal injury or wrongful death. *Williams v. Wilson,* 972 S.W.2d 260, 265 (Ky.1998). *See also Happy v. Erwin,* 330 S.W.2d 412 (Ky.1959), and *Ludwig v. Johnson,* 243 Ky. 533, 49 S.W.2d 347 (1932). Furthermore, the doctrine applies not only to rights of action existing at the time of the adoption of our Constitution in 1891, but also to actions and remedies which have developed through the common law since the adoption of the Constitution. *Perkins v. Northeastern Log Homes,* 808 S.W.2d 809, 815–18 (Ky.1991).

In *Williams v. Wilson, supra,* the Kentucky Supreme Court held that the doctrine precluded the General Assembly's attempt to abolish the common-law remedy for punitive damages based upon gross negligence. *Id.* at 267. Likewise, the Es-

**2.** Section 14 provides that "[a]ll courts shall be open, and every person for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

**3.** Section 54 provides that "[t]he General Assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property."

**4.** Section 241 provides as follows:

Whenever the death of a person shall result from an injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same. Until otherwise provided by law, the action to recover such damages shall in all cases be prosecuted by the personal representative of the deceased person. The General Assembly may provide how the recovery shall go and to whom belong; and until such provision is made, the same shall form part of the personal estate of the deceased person.

tate contends that the Dram Shop Act is unconstitutional to the extent that it prohibits recovery of punitive damages against a dram shop based on its gross negligence or reckless actions. Based on the interpretation of the jural rights doctrine as set out in *Williams v. Wilson,* we are compelled to agree.

There are no cases prior to *Grayson* which address whether punitive damages could be recovered against a dram shop. It is arguable that punitive damages were not available prior to *Grayson,* because dram shop liability was based upon violation of specific statutory duties. However, *Grayson* extended liability by holding that a dram shop may be liable based upon breach of a common-law duty of care. *Williams v. Wilson* recognized that there is a long-established common-law right to recover punitive damages arising from gross negligence, recklessness, or wantonness. *Williams,* supra at 263–64. By adopting a negligence standard of care as applied to dram shops in *Grayson,* the Supreme Court opened dram shop claims to the full range of damages recoverable in any negligence claim.

Skyline urges that the General Assembly has the prerogative to make a public policy determination that the consumption, rather than the serving of intoxicating beverages, is the proximate cause of any injury inflicted by an intoxicated person upon himself or another person. We agree that in most situations, the formulation of public policy is a matter within the purview of the legislature. However, that prerogative is circumscribed by the limits imposed by the Kentucky Constitution. Section 54 of the Kentucky Constitution prohibits the General Assembly from limiting recovery for wrongful death, personal injury, or injury to property.[5] Under the jural rights doctrine, the General Assembly cannot enact any limitation on recovery of a common-law right of action for wrongful death or personal injury. We conclude that the General Assembly's adoption of a proximate causation standard runs afoul of the limits imposed by the Kentucky Constitution.

■■■ We also conclude that the legislative finding regarding proximate causation in KRS 413.241(1) intrudes upon the fact-finding role of the courts, in violation of Sections 27, 28, and 109 of the Kentucky Constitution. In pertinent part, these sections prohibit one branch of government from exercising the powers vested in another branch. *Akers v. Baldwin,* 736 S.W.2d 294, 309–10 (Ky.1987), superseded

---

5. In contrast, most of the cases cited by Skyline involve the legislature's determination of policy in matters not involving wrongful death, personal injury, or injury to property. *See Consolidated Infrastructure Management Authority, Inc. v. Allen,* 269 S.W.3d 852 (Ky. 2008) (Legislature may make policy decision to limit punitive damages for violation of the Whistleblower Act); *J.N.R. v. O'Reilly,* 264 S.W.3d 587, 593 (Ky.2008) (Legislature may make policy decision to limit or prohibit paternity actions brought by third parties involving children born during a marriage); *Compex Intern. Co., Ltd. v. Taylor,* 209 S.W.3d 462, 465 (Ky.2006) (Legislature may make policy decision to require privity in a warranty claim under the Uniform Commercial Code); *Sutton v. Transportation Cabinet,* 775 S.W.2d 933 (Ky.App.1989) (Policy decision involving length of driver's license suspension); and *Batesville Casket Co. v. Fields,* 288 Ky. 104, 155 S.W.2d 743 (1941) (Public policy determination involving assignments, attachments, and garnishments of salaries due public officers). While the remaining cases involved recovery for personal injury or wrongful death, the factual and legal issues are distinguishable from the present case. *See Bentley v. Bentley,* 172 S.W.3d 375 (Ky.2005) (Supreme Court overruled doctrine of intra-family immunity in tort cases. However, the legislature had not addressed the issue since the prior ruling by the Court); and *McGuffey v. Hall,* 557 S.W.2d 401 (Ky.1977) (Compulsory medical malpractice insurance requirement outside scope of state's police powers).

by Ky. Const. § 19(2). The Estate contends that a finding of proximate causation in a tort case is a factual matter entrusted to the judicial branch, and in particular the finder of fact in a judicial proceeding. Thus, the Estate maintains that the legislature exceeded its authority when it defined proximate causation in a dram shop case.

Skyline responds that the legislature may properly make determinations regarding issues of legal causation, such as foreseeability and intervening causes. Although this is generally true where the courts have not spoken on this issue, we are not writing on a blank slate. The Court in *Grayson* recognized that the dram shop's liability may be limited based upon whether the injury was a foreseeable consequence of the breach of the standard of care. However, the Court indicated that this will generally be a factual determination. *Grayson, supra* at 333–34.

Since *Grayson,* Kentucky courts have recognized that not every injury will be a foreseeable consequence of the dram shop's improper service of alcohol. *See Isaacs v. Smith,* 5 S.W.3d 500 (Ky.1999), holding that a shooting was not a foreseeable consequence of sale of alcohol; and *Priest ex rel. Estate of Priest v. Black Cat, Inc.,* 74 S.W.3d 769 (Ky.App.2001), holding that genuine issues of material fact existed as to whether minor's drowning was a foreseeable result of the illegal sale of alcohol. Nevertheless, the Kentucky Supreme Court has held that it is clearly foreseeable that an intoxicated patron who thereafter operates his motor vehicle may injure a third party. *Isaacs v. Smith, supra* at 503.

In any case, Kentucky's common law has entrusted the determination of legal causation to the courts. By attempting to set out a contrary definition of proximate causation, the General Assembly has intruded into the purview of the judiciary. Consequently, we must find that KRS 413.241(1) is unconstitutional to the extent that it would prevent a fact-finder from determining whether an injury was a foreseeable consequence of a dram shop's improper service of alcohol.

Since we have found that KRS 413.241(1) is unconstitutional as a violation of the jural rights and the separation-of-powers doctrines, we need not address the Estate's remaining constitutional arguments. Furthermore, the Estate does not challenge the Act's standard for imposing liability upon a dram shop or its creation of a priority of liability between the dram shop and the intoxicated tortfeasor. Thus, any issue regarding the constitutionality of these provisions is not before this Court.

■ Rather, we hold only that KRS 413.241 may not be constitutionally interpreted as prohibiting a recovery of punitive damages against a dram shop or establishing the standard for proximate cause. However, we emphasize that a recovery of punitive damages in such a case must be based on the actions of the dram shop, not of the intoxicated tortfeasor. While the liability of the intoxicated tortfeasor remains relevant to determine the dram shop's liability for compensatory damages, it is not relevant to an award of punitive damages against the dram shop. The factual determination is whether the dram shop's violation of its common-law and statutory duties amounted to gross negligence, fraud, oppression, or malice. The trial court may determine the sufficiency of the evidence on this issue and on any issues relating to legal causation. However, if the trial court determines that there are genuine issues of material fact on these issues, the matters must be submitted to the jury.

 

Accordingly, the judgment of the Christian Circuit Court is reversed, and this matter is remanded for further proceedings on the merits of the Estate's claim for punitive damages as set out in this opinion.

ALL CONCUR.