**Monica CARRUTHERS, Appellant**

v.

**Max EDWARDS and Lois Ann Edwards, Appellees.**

No. 2011–CA–001612–MR.

Court of Appeals of Kentucky.

Aug. 10, 2012.

Discretionary Review Denied by Supreme Court April 17, 2013.

David V. Oakes, Paducah, KY, for appellant.

Theodore S. Hutchins, Paducah, KY, for appellee.

Before ACREE, Chief Judge; CLAYTON and STUMBO, Judges.

## OPINION

ACREE, Chief Judge:

Appellant Monica Carruthers was injured when Lucas Watson, a patron of Foolish Heart, Inc., d/b/a/ Froggy's Sports Bar, purportedly drove his vehicle while intoxicated, striking Carruthers in Foolish Heart's parking lot. Carruthers filed suit against several individuals, including Appellees Max and Lois Ann Edwards, the owners of the premises on which Foolish Heart is located. The issue in the case before us may be summarized as this: what liability can be imputed to an owner of real property, on which a bar or similar establishment is operated by a tenant, when a patron of that bar consumes alcohol and, thereafter, drives a motor vehicle causing injury or death to a third party? Following a careful review, we affirm the

McCracken Circuit Court's July 28, 2011 order granting the Appellees' motion to dismiss Carruthers' complaint for failing to state a claim upon which relief may be granted.

### I. Facts and Procedure

As it pertains to the Appellees, Carruthers alleges liability under the Dram Shop Act and common law negligence.[1] When we boil down Carruthers' claims to their elemental allegations and, as we must, take those allegations as true, the claims asserted are as follows.

Appellee leased real property to Foolish Heart where it operated Froggy's Sports Bar in Paducah, Kentucky. Foolish Heart negligently served too much alcohol to Lucas Watson.[2] Watson negligently injured Carruthers.

Carruthers asserts that Appellees should be held liable to her, but not simply because they leased premises to Foolish Heart. Rather, Carruthers asserts that additional allegations, when taken as true, made Foolish Heart's negligent act of over-serving Watson foreseeable and, in turn, also made foreseeable Watson's negligent act that injured Carruthers. First, Appellees operated an unrelated establishment that lawfully sold alcohol to patrons at a different location and were, therefore, aware of the laws governing the operation

---

1. Count IV of the Complaint sets forth the claim against Appellees. The claim does not refer directly to the Dram Shop Act, Kentucky Revised Statutes (KRS) 413.241; however, the brief indicates the Act is one basis of potential liability. Nor does the claim use the terms "negligence" or "duty" or "breach" or "foreseeability" or "proximate cause"; however, Carruthers states that Appellees "are jointly liable with Foolish Heart, Inc., dba Froggy's Sports Bar for the tortious activities complained of herein." Applying the concepts of notice pleading, we read the claim as asserting claims under the Dram Shop Act and for common law negligence.

2. The Complaint implies that Lucas Watson had been convicted either of a misdemeanor attributable to the consumption of alcohol or of a felony. Such facts are nowhere stated; conclusory reference is simply made that Foolish Heart violated KRS 244.080(4) which prohibits serving alcoholic beverages to persons having been so convicted. For purposes of our analysis, it is enough that we take as true that Foolish Heart over-served alcohol to Watson.

of a bar. Second, Appellees knew or should have known that Foolish Heart "habitually" over-served its patrons. Third, Appellees profited from the conduct of Foolish Heart's business. Fourth, Appellees knew or should have known that Foolish Heart's establishment was a public nuisance. Because Appellees could foresee Carruthers' injury, so goes the argument, Appellees had a duty to prevent it; having failed to do so, Carruthers asserts, makes Appellees liable to her.

Appellees filed a pre-answer motion to dismiss pursuant to Kentucky Rules of Civil Procedure (CR) 12.02(f) asserting Carruthers' complaint failed to state a claim upon which relief may be granted. The motion was granted without further comment. This appeal followed.

## II. *Standard of Review*

■ CR 12.02(f) sets forth the standard for dismissing a complaint for failure to state a claim.

> The court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim. In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883–84 (Ky.App.2002) (internal quotation marks and footnotes omitted). We review dismissals under CR 12.02(f) *de novo*, accepting as true the plaintiff's factual allegations and drawing all reasonable inferences

in the plaintiff's favor. *Gall v. Scroggy*, 725 S.W.2d 867, 868–69 (Ky.App.1987); *Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968) ("For the purpose of testing the sufficiency of the complaint the pleading must not be construed against the pleader and the allegations must be accepted as true.").

## III. *Dram Shop Act*

We first address whether Carruthers' complaint stated a valid claim under the Dram Shop Act against the Appellees. Kentucky's Dram Shop Act, KRS 413.241, provides, in pertinent part:

> (1) The General Assembly finds and declares that the consumption of intoxicating beverages, rather than the serving, furnishing, or sale of such beverages, is the proximate cause of any injury, including death and property damage, inflicted by an intoxicated person upon himself or another person.
>
> (2) [N]o person holding a permit under KRS 243.030, 243.040, 243.050, nor any agent, servant, or employee of the person, who sells or serves intoxicating beverages to a person over the age for the lawful purchase thereof, shall be liable to that person or to any other person ... for any injury suffered off the premises ... because of the intoxication of the person to whom the intoxicating beverages were sold or served, unless a reasonable person under the same or similar circumstances should know that the person served is already intoxicated at the time of serving.

KRS 413.241(1), (2).[3]

The parties first dispute the continuing validity of the Dram Shop Act following this Court's recent opinion *Taylor v. King*,

---

**3.** The remaining sections of the statute, sections (3), (4) and (5), respectively, provide that: the intoxicated person is primarily liable to third parties; an exception to the limitation of liability under certain circumstances; and the statute is not retroactive. KRS 413.241(3)–(5).

345 S.W.3d 237 (Ky.App.2010). In *Taylor*, this Court declared unconstitutional KRS 413.241's provision governing proximate cause "to the extent it would prevent a fact-finder from determining whether an injury was a foreseeable consequence of a dram shop's improper service of alcohol." *Id.* at 244. In so doing, we explained "the legislative finding regarding proximate causation in KRS 413.241(1) intrudes upon the fact-finding role of the courts[.]" *Id.* at 243. Accordingly, in light of *Taylor*, KRS 413.241(1)'s presumption or imputation of proximate cause no longer exists. *Id.*

The relevant sections of KRS 413.241 "imposing liability upon a dram shop or its creation of a priority of liability between the dram shop and the intoxicated tortfeasor[,]" however, remain unchanged. *Id.* at 244. KRS 413.241 still imposes a duty upon a dram shop and its employees, before selling or serving alcohol to a person, to use their powers of observation to perceive readily visible warning signs that a person is intoxicated, and to refrain from serving or selling alcohol to that patron. KRS 413.241(2). If the dram shop or its employees fail to perceive, or simply ignore, those warning signs, the dram shop may be held liable pursuant to KRS 413.241 provided the dram shop's negligent conduct is also the proximate cause of the plaintiff's injuries. *Id.*; *Taylor*, 345 S.W.3d at 244.

In sum, while *Taylor* struck down as unconstitutional the presumption of proximate cause codified in KRS 413.241(1), it neither addressed nor held the remainder of KRS 413.241 unconstitutional. 345 S.W.3d at 244. Dram shop liability—under specifically delineated circumstances—still exists in this Commonwealth, as does the statutory limitation on liability. *See* KRS 413.241(2).

Carruthers next argues that if the circuit court based its order dismissing her complaint on the Dram Shop Act, the order is erroneous as a matter of law and must be reversed because, in Carruthers' view, she asserted a valid Dram Shop Act claim against the Appellees. We disagree because Carruthers' complaint cannot be read as asserting such a claim under the Dram Shop Act against these Appellees.

The statute addresses two types of persons: a dram shop (and its servers) who serve alcohol to an intoxicated person, and the intoxicated person the dram shop serves. KRS 413.241(2). It does not create or comment upon the liability of a third-party who fits neither description. Although Appellees run their own dram shop, they served no alcohol to Watson. We conclude that no purpose intended by our Legislature's passage of the Dram Shop Act would be served by imposing liability upon a lessor who simply holds title to property on which his properly licensed lessee engages in the regulated sale of intoxicating liquors. *See Robinson v. Walker*, 63 Ill.App.2d 204, 211 N.E.2d 488, 491 (1965). Therefore, the complaint failed to state a claim based upon the Dram Shop Act.

We next address whether Count IV of the complaint stated a common law claim against the Appellees.

### IV. *Common law claims*

Carruthers asserts in her brief that, "because the allegations in the Complaint must be taken as true, it must be accepted that the Edwards were personally involved in the operation of [Foolish Heart d/b/a] Froggy's." We have carefully read the claim against the Appellees, including those other portions of the complaint incorporated by reference, and we do not agree. The relationship between Appellees and Foolish Heart was that between

lessor and lessee. There is no reasonable reading of the complaint that asserts any further connection, by contract or conduct, indicating that the Appellees had any say whatsoever in the operation of Froggy's. If a common law claim upon which relief can be granted against Appellees exists, it must be based either: (1) upon their status as owners of the premises, or (2) upon their own negligence.

We find no common law claim based on Appellees' status as owners of the premises.

■ "It cannot be disputed that as a general rule the landlord is not liable for the negligent acts of his tenant." *Green v. Asher Coal Min. Co.*, 377 S.W.2d 68, 69 (Ky.1964). However, there are exceptions to the general rule. These exceptions "arise in those cases where the condition or use of the premises is so potentially harmful that the courts will not permit the owner to hide behind a lease." *Asher Coal*, 377 S.W.2d at 70. Kentucky courts have never determined that, by their nature, establishments serving intoxicating beverages pursuant to a license issued and regulated by the Commonwealth are "so potentially harmful." *Id.; Taylor*, 345 S.W.3d at 240.

■ Although Carruthers does not cite Restatement (Second) of Torts § 379A, we believe her asserted claim is most consistent with that section. Kentucky has not embraced the articulation of the tort described in § 379A[4], though it is consistent with *Asher Coal*. The section states:

A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,

(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and

(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.

Our research reveals but a single case in American jurisprudence that applies this section to a fact pattern involving a tenant that sold intoxicating beverages. In *Phoung Luc v. Wyndham Management Corporation*, 496 F.3d 85 (1st Cir.2007), the plaintiff alleged that "the Hotel [lessor] knew, at the time the lease was signed, that the Roxy [the dram shop] would serve alcohol and had grounds to know that there would be an unreasonable risk of over-serving patrons." *Id.* at 92. The First Circuit held that, "[w]hatever the merits abstractly of these theories of liability against the Hotel, they fail[.]" *Id.* at 93. The court noted that "Restatement § 379A states that a landlord may only be liable if he knew, or had reason to know, that the tenant's activities would 'unavoidably involve such an unreasonable risk.'" *Id.* As we noted above, Kentucky has never concluded that this tenant's activity— the licensed operation of a bar—would unavoidably involve the unreasonable risk of over-serving patrons. *Taylor*, 345 S.W.3d at 240. Until a legislative enactment indicates that, as a matter of policy, the risk of over-serving patrons is so unreasonable and unavoidable that liquor licenses will no longer be issued, we must conclude otherwise.

Furthermore, with § 379A, "liability hinges on the landowner's knowledge, *at the inception of the lease*, regarding the

---

**4.** While the Restatement titles this section "Activities After Lessor Transfers Possession" we think a more direct description of the tort described therein might be "Negligent Leasing."

existence of a dangerous activity. The plaintiff fails to recognize that requirement." *Stokes v. Lyddy*, 75 Conn.App. 252, 815 A.2d 263, 272 (2003)(lessor's tenant's dog bit plaintiff). Fatally, Carruthers never alleges that, at the inception of the lease, the Appellees knew of the dangerous activity complained of—the habitual over-serving of patrons.

This jurisprudence is entirely consistent with *Asher Coal,* wherein our highest court said:

> Liability of the landlord for the activities of the tenant may however be based on an *express authorization of the very conduct* or condition that is the source of injury, or *on the unreasonably great likelihood, at the time of the letting, that the tenant will create such a nuisance.* Such a likelihood will be found where injury results from the normal, expectable use by the tenant of the leased premises[.]

*Asher Coal,* 377 S.W.2d at 70 (citation omitted; emphasis added).[5] There is no allegation in the complaint that, at the inception of the lease, Appellees expressly authorized Froggy's to over-serve patrons; nor was there an allegation that, at the inception of the lease, there was the "unreasonably great likelihood" that Froggy's would do so. Licensing and regulation was the landlord's assurance to the contrary.

For these reasons, we find no claim in the complaint that would justify holding Appellees liable on this or a similar theory.

 We also fail to find, independent of their status as lessors, any claim of negligence against the Appellees that would survive a motion pursuant to CR 12.02(f).

In order to state a cause of action based on negligence, Carruthers must allege that the Appellees owed her a duty of care, that they breached that duty, and that a causal connection exists between the breach of the duty and the injury she suffered. *Lewis v. B & R Corporation,* 56 S.W.3d 432, 436–37 (Ky.App.2001). Unfortunately for Carruthers, the claim in Count IV against Appellees fails to describe any duty of care that was owed. As noted in footnote 1, the claim never uses the terms "negligence," "duty," "breach," "foreseeability," or "proximate cause." We would have to strain beyond the breaking point the loose confines placed upon the complaint by notice pleading concepts in order to find that Appellees owed a duty to Carruthers to prevent the negligence of Watson by first preventing the negligence of Foolish Heart. That relational context between Appellees and Carruthers is too attenuated to be palatable in our jurisprudence. *Jenkins v. Best,* 250 S.W.3d 680, 691 (Ky.App.2007) ("[O]ur courts have never found liability in tort unless we have first found circumstances giving rise to a relationship of some kind in which one particular party owed a duty to another particular party."). We find no duty owed by Appellees to Carruthers even under the most liberal reading of the complaint.

### V. *Conclusion*

For the foregoing reasons, we affirm the McCracken Circuit Court's July 28, 2011 order granting the Appellees' motion to dismiss Carruthers' complaint for failing to state a claim upon which relief may be granted.

ALL CONCUR.

---

**5.** In *Asher Coal,* the court clarified that the term "nuisance," as used in this context, simply refers to "a condition which causes injury to another." 377 S.W.2d at 70.