RENDERED: OCTOBER 2, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1921-MR

LOCAL FIRST REALTY, LLC　　　　　　　　　　　　　APPELLANT

　　　　　　　　　APPEAL FROM FAYETTE CIRCUIT COURT
v.　　　　　　　　HONORABLE JOHN E. REYNOLDS, JUDGE
　　　　　　　　　ACTION NO. 19-CI-02227

MICHAEL SCARAVILLI; JOHN W.
OAKLEY, II; AND SOUTHERN
LUXURY HOMES, LLC　　　　　　　　　　　　　　　APPELLEES

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE: ACREE, KRAMER, AND TAYLOR, JUDGES.

KRAMER, JUDGE: Local First Realty, LLC ("LFR") appeals from an order of

the Fayette Circuit Court dismissing its complaint alleging breach of contract by

Southern Luxury Homes, LLC ("SLH") for failure to state a claim pursuant to CR[1]

---

[1] Kentucky Rule of Civil Procedure.

12.02(f). Upon careful review, we affirm in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

LFR is a real estate agency based in Lexington, Kentucky. In March 2017, LFR sold a lot known as 4037 Real Quiet Lane to SLH, which planned to construct a custom-made home on the lot. The sales contract for purchase of the lot contained a contingency clause that stated:

> Contingent upon [SLH] signing Exclusive Right to Sell with [LFR], for any home built by [SLH] and/or any related building company in Lexingtons [sic] Walnut Grove Estates and Canebrake communities. The Exclusive Right to Sell is attached to this Contract and made part of this contract. [SLH] knows that both sellers are licensed real estate agents in the State of Kentucky.

Pursuant to the contingency clause, the parties entered into an exclusive right-to-sell contract on March 20, 2017 ("the 3/20/2017 contract"). This contract gave LFR the exclusive right to sell "any home built or sold in Walnut Grove Estates and/or Canebrake communities in Lexington, KY." The 3/20/2017 contract was for a term of four years (March 20, 2017 to March 20, 2021) and, in relevant part, stated that LFR would receive a four percent (4%) commission on the gross contract sales price minus any lot price. The 3/20/2017 contract also provided for a 120-day protection period for LFR at the expiration of the contract.

SLH began construction of a home at 4037 Real Quiet Lane in May 2017. At least two potential buyers met with LFR and/or SLH beginning in

September 2017, but the home did not sell at that time.  On February 11, 2018,

LFR contacted SLH via email to discuss a new listing agreement for the home.

The email stated, in relevant part:

> When we began this relationship with you we had high
> hopes.  We even listed three "proposed constructions" for
> [SLH], one at 4005 Real Quiet Lane, one at 500
> Canebrake and one at 600 Canebrake.  All three of these
> are still on MLS.  The exposure you have received
> because of our desire to market a young bright ambitious
> new builder shouldn't be underestimated or
> unappreciated.
>
> We are fine with deleting them and ending our
> relationship once 4037 Real Quiet Lane closes.  If you
> would like to keep them active listings, we need new
> listing agreement[s] for each one of them as well as
> whatever commission structure we can agree on.

The parties entered into a subsequent Exclusive Right to Sell Contract

on February 13, 2018 ("the 2/13/2018 contract").  The 2/13/2018 contract was

specific to 4037 Real Quiet Lane only, and its term was from February 13, 2018 to

April 15, 2018.  The contract contained the same 120-day protection period,

applicable at the expiration of the contract, and the same language regarding a four

percent (4%) commission for LFR.  The Jacksons, a married couple who had been

shown the home by LFR prior to the execution of the 2/13/2018 contract,

ultimately reconsidered and closed on 4037 Real Quiet Lane on May 31, 2018, for

$813,000.00.  The Cherrys, another couple, signed a contract with SLH to purchase

a home at 4005 Real Quiet Lane, and the closing occurred on July 9, 2018, for $934,750.00.

On June 17, 2019, LFR filed a complaint in Fayette Circuit Court alleging breach of contract by SLH and individually against Michael Scaravilli and John W. Oakley, SLH's principal agents. LFR claimed it was owed four percent (4%) commission for the sale of 4037 Real Quiet Lane, minus the cost of the lot, under the terms of the 2/13/2018 contract. LFR also claimed that it was owed four percent (4%) commission for the sale of 4005 Real Quiet Lane under the terms of the 3/20/2017 contract which, they asserted, was never terminated. SLH did not file a responsive pleading but filed a motion to dismiss LFR's complaint pursuant to CR 12.02.[2] LFR filed a first amended complaint after SLH filed its motion to dismiss, but prior to the circuit court's hearing on the motion to dismiss.[3]

The circuit court conducted a hearing on SLH's motion to dismiss and entered an order dismissing LFR's complaint. The circuit court found that the 3/20/2017 contract was terminated by the 2/13/2018 contract and that the intent of the parties to terminate the 3/20/2017 contract for the more specific 2/13/2018

---

[2] "A motion to dismiss is not a responsive pleading." *Kentucky Lake Vacation Land, Inc. v. State Property and Bldgs. Commission*, 333 S.W.2d 779, 781 (Ky. 1960).

[3] *See* CR 15.01, which states in relevant part that "[a] party may amend his pleading once as a matter of course at any time before a responsive pleading is served[.]"

contract was evinced in the email from LFR to SLH on February 11, 2018.[4]

Because the 3/20/2017 contract was terminated prior to its expiration, the circuit court found that the 120-day protection period of the 3/20/2017 contract was never triggered. As a result, LFR was not due commission for the sale of 4005 Real Quiet Lane. The circuit court also found that even though the closing of 4037 Real Quiet Lane occurred within the protection period provided for in the 2/13/2018 contract, there was "no proof or valid allegations" that the property was shown to the Jacksons by SLH during the term of the 2/13/2018 contract. Therefore, the court held that LFR was not entitled to commission for the sale of 4037 Real Quiet Lane. Finally, the circuit court held that neither Scaravilli nor Oakley could be held individually liable as principals of SLH. This appeal followed.

On appeal, LFR argues the circuit court erred: (1) in concluding that the 3/20/2017 contract was terminated; (2) by ruling that there was "no proof or valid allegations" that the Jacksons (who ultimately purchased 4037 Real Quiet Lane) were shown the home during the term of the 2/13/2018 contract; and (3) in concluding that neither Scaravilli nor Oakley were liable in their individual

---

[4] As SLH points out, documents that are central to a plaintiff's complaint are subject to consideration without converting a motion to dismiss to a motion for summary judgment. *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 564 (Ky. App. 2017). LFR's original and first amended complaints reference and quote the February 11, 2018 email.

capacities when they signed the 3/20/2017 contract.  We agree as to LFR's second argument only.

We review dismissals under CR 12.02(f) *de novo*, accepting as true LFR's factual allegations and drawing all reasonable inferences in LFR's favor. *Gall v. Scroggy*, 725 S.W.2d 867, 868-69 (Ky. App. 1987); *Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968) ("For the purpose of testing the sufficiency of the complaint the pleading must not be construed against the pleader and the allegations must be accepted as true."); *Carruthers v. Edwards*, 395 S.W.3d 488, 491 (Ky. App. 2012).

We turn first to LFR's contention that the 3/20/2017 contract was not terminated.  We agree with the circuit court's reasoning and incorporate it as follows:

> [The 3/20/2017] contract concerned the 4037 [Real Quiet Lane] Property and 4005 [Real Quiet Lane] Property. [LFR] sent [SLH] an e-mail on February 11, 2018, which stated that a new contract was needed for [the 4037 Real Quiet Lane] property.  The only way to interpret this e-mail is to see that [LFR] was terminating the 3/20/17 contract in place of the new contract, 2/13/18 contract. [SLH] could have objected to the termination of the 3/20/17 contract but instead agreed to the terms of the new contract.  Therefore, due to [LFR's] own actions and subsequent signing of the 2/13/18 contract, the 3/20/17 contract was terminated.  *See Harrodsburg Motor Co. v. Goodwin Bros.*, 165 S.W.2d 529, 531 (Ky. 1942).  Thus, there was no breach of contract for the properties 4005 [Real Quiet Lane] Property and 4037 [Real Quiet Lane] Property under the 3/20/17 contract.

We also agree with SLH's argument that "under Kentucky law, a written contract complete in itself will be conclusively presumed to supersede a prior one related to the same subject matter." *White/Reach Brannon RD., LLC v. Rite Aid of Kentucky, Inc.*, 488 S.W.3d 631, 638 (Ky. App. 2016) (internal citation omitted). We further note that paragraph 31 of both the complaint and first amended complaint states "[o]n February 5, 2018, Oakley and Scaravilli/SLH requested that LFR lower the price of the 4037 [Real Quiet Lane] Property from $879,900 to $872,900. *LFR saw this request as an opportunity to get another listing agreement for the property.*" (Emphasis added.) The only way to interpret paragraph 31, combined with the February 11, 2018 e-mail, is that LFR intended to create a new contract with regard to 4037 Real Quiet Lane and, by signing the 2/13/2018 contract, SLH agreed to the new terms, thus terminating the 3/20/2017 contract. SLH did not sign new agreements for any of the other properties mentioned in the February 11, 2018 email from LFR, including 4005 Real Quiet Lane. We agree with the circuit court that, because the 3/20/2017 contract was terminated by the parties, LFR is not owed commission on 4005 Real Quiet Lane. Accordingly, there is no error.

We now turn to LFR's second argument.[5]  With regard to the 120-day protection period contained in the 2/13/2018 contract, the circuit court specifically found that "there is no proof or valid allegations that [SLH] showed [4037 Real Quiet Lane] to the purchaser during the time from of [sic] February 11, 2018 through April 15, 2018."  However, paragraph 37 of LFR's first amended complaint states "[d]uring the term of the 2/13/18 Contract, [LFR] saw Scaravilli showing the 4037 [Real Quiet Lane] Property to the Jacksons."

> When confronted with a motion to dismiss
>
> [t]he court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim.  In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law.  Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

*James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002) (internal quotation marks and footnotes omitted).

The circuit court erroneously acted as factfinder on SLH's motion to dismiss when it concluded that LFR had presented "no proof" as to whether SLH showed 4037 Real Quiet Lane to the Jacksons during the term of the 2/13/2018

---

[5] SLH argues that this argument is unpreserved.  However, as LFR points out and the record before us shows, it is preserved in LFR's memorandum in opposition to SLH's motion to dismiss, which was filed in the circuit court on August 2, 2019.

contract. The question before the circuit court was not whether LFR had actually proven the property was shown to the Jacksons, but rather, *if* LFR *could* prove the property was shown, would LFR be entitled to relief? *See id.*[6] Accordingly, there was no testimony taken or other proof offered at the hearing on the motion to dismiss. Hence, the circuit court clearly erred in ruling that LFR had presented "no proof" regarding whether SLH had shown the property to the Jacksons during the term of the 2/13/2018 contract.

Further, the circuit court did not elaborate when it ruled that LFR had presented no "valid allegations," and we are perplexed as to this ruling. SLH asserts that the first amended complaint, which included the addition of paragraph 37, was "self-serving, unverified, and highly vague,"[7] yet does not point to any precedent in Kentucky caselaw and makes no real argument to persuade this Court that the allegations contained in paragraph 37 are invalid. Indeed, this Court is at a loss as to how the circuit court made this finding absent the requirement of any proof whatsoever when evaluating a motion made pursuant to CR 12.02. LFR acted according to the Kentucky Rules of Civil Procedure (specifically, CR 15.01) when it filed its first amended complaint. SLH does not allege that it was

---

[6] *See also* CR 8.01(1) which states, in relevant part, that a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

[7] *See* Appellee's brief at page 18.

-9-

prejudiced in any way by said filing, and we discern no reason to hold that the allegations contained in paragraph 37 are invalid.

SLH also argues that the paragraph addressing commission contained in the 2/13/18 contract requires LFR to find a buyer "who is ready, willing and able" in order to trigger the 120-day protection clause and, therefore, even if SLH showed the home to the Jacksons during the term of the contract, LFR would still not be entitled to commission. We disagree. Paragraph two (2) of the 2/13/2018 contract reads, in pertinent part, as follows:

> COMMISSION: To pay said listing broker 4% of the gross contract sales price as per closing documents for services (a) in case of a sale or exchange of said property or any part of it within said listing period by the seller(s), the listing broker, or by any person or (b) upon the listing broker finding a buyer who is ready, willing, and able to complete the purchase on the terms of this agreement as proposed by the seller(s) or (c) in case of any such sale or exchange of the said property or any part within 120 days (protection period) subsequent to the expiration of this agreement to any party shown the property or any part of it during the term of the listing[.]

SLH argues that the phrase "any such sale or exchange" in subsection (c) refers back to subsection (b) which requires LFR to find a buyer who is ready, willing, and able to complete the purchase. We must disagree. A plain reading of the entire paragraph, particularly use of the word "or" between subsections and the phrase "any such sale or exchange," results in no ambiguity. "[A]ny such sale or

exchange" refers back to *both* subsections (a) and (b).[8] There is no qualification to suggest it refers to subsection (b) only, and the portion at issue is written as one continuous sentence. It appears the circuit court also interpreted "any such sale or exchange" to refer to any of the conditions listed in subsections (a) or (b) in its order (*i.e.*, that there was "no proof or valid allegations that [SLH] showed the property to the purchaser" during the term of the 2/13/2018 contract). We agree with LFR that the terms of the contract do not specify which party had to show the property to the buyer in order for the protection period to be triggered.

LFR did not have an opportunity to demonstrate whether 4037 Real Quiet Lane had been shown to the Jacksons by SLH during the term of the 2/13/2018 contract.[9] Therefore, if we accept LFR's factual allegations as true and draw all reasonable inferences in LFR's favor,[10] we must conclude that the circuit court erred in concluding that there was "no proof or valid allegations" that 4037 Real Quiet Lane was shown to the Jacksons by SLH during the term of the

---

[8] "'In the absence of ambiguity a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning[.]" *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003) (internal footnotes omitted).

[9] The record before us shows that SLH sent discovery requests to LFR prior to the circuit court's order on the motion to dismiss, but it is unclear from the record before us whether LFR conducted any discovery prior to entry of the circuit court's order dismissing the complaint.

[10] *See Gall*, 725 S.W.2d at 869.

2/13/2018 contract in the context of analyzing SLH's motion to dismiss. We therefore reverse and remand on this narrow issue only.

Finally, LFR argues that both Scaravilli and Oakley signed the 3/20/2017 contract in their individual capacities and should therefore be held liable. Because we have held that the 3/20/2017 contract was terminated prior to its expiration by the 2/13/2018 contract, we need not reach this issue. However, we note that we agree with the circuit court's reasoning in the order dismissing the action.

In conclusion, we affirm the Fayette Circuit Court in part, reverse in part, and remand for proceedings not inconsistent with this opinion.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Michael J. Gartland
Lexington, Kentucky

BRIEF FOR APPELLEES:

Carroll M. Redford, III
Elizabeth C. Woodford
Lexington, Kentucky