RENDERED:  MAY 3, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2023-CA-0835-MR

STEVE DISMORE          APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.  HONORABLE THOMAS DAWSON WINGATE, JUDGE
ACTION NO. 22-CI-00102

KENTUCKY PAROLE BOARD; AND
LADEIDRA JONES, CHAIR,
KENTUCKY PAROLE BOARD, IN
HER OFFICIAL CAPACITY       APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, GOODWINE, AND A. JONES, JUDGES.

CETRULO, JUDGE:  Steve Dismore appeals the order of the Franklin Circuit

Court denying his motion for summary judgment challenging the refusal of the

Kentucky Parole Board ("Board") – due to its prior issuance to him of a "serve-

out" – to grant him an additional parole hearing.  Upon review, we affirm.

# BACKGROUND

Steve Dismore was convicted in 1987 of murder and sentenced to 99 years' incarceration. His sentence carried with it the possibility of parole. Eight years later, Dismore went before the Board for his first parole hearing. The Board denied his request for parole and instead directed him to serve the remainder of his sentence (*i.e.*, it ordered a "serve-out"). On June 20, 2021, Dismore submitted requests for a new parole hearing to the Department of Corrections and the Board, asserting he was entitled to another hearing pursuant to Kentucky Revised Statute ("KRS") 439.340. The Board denied his request, explaining its prior serve-out directive rendered him ineligible for parole. Dismore then sought declaratory relief in Franklin Circuit Court, reasserting that KRS 439.340 entitled him to a new parole hearing, and further arguing that even if it did not, the Board's "serve-out" order was unconstitutional "*ex post facto* punishment." Following cross-motions for summary judgment on these issues from both Dismore and the Board, the circuit court found in the Board's favor and dismissed Dismore's suit. Dismore now appeals both the summary judgment in favor of the appellees and the denial of his cross-motion for summary judgment. Additional facts will be discussed below in our analysis.

## STANDARD OF REVIEW

Summary judgment is only appropriate when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure ("CR") 56.03. In general, denial of a motion for summary judgment is not appealable because of its interlocutory nature, but the case *sub judice* falls under an established exception. *Abbott v. Chesley*, 413 S.W.3d 589, 602 (Ky. 2013) (citation omitted). "[A]ppellate review [of a denial of a summary judgment motion] is proper if (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom." *Id*. (internal quotation marks and citations omitted). Our review of the record establishes that these elements have been met, and the only matters on appeal are purely issues of law, which we review *de novo*. *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005) (citation omitted). We "afford no deference to the trial court's application of the law[.]" *Brady v. Commonwealth*, 396 S.W.3d 315, 317 (Ky. App. 2013) (citation omitted).

## ANALYSIS

On appeal, Dismore reasserts the same arguments he posited below. We begin with his contention that KRS 439.340 entitled him to a new parole hearing. The statute provides in relevant part:

> (1) The [B]oard may release on parole persons confined in any adult state penal or correctional institution of Kentucky or sentenced felons incarcerated in county jails *eligible* for parole. . . .
>
> . . .
>
> (14) If the parole board does not grant parole to a prisoner, the maximum deferment for a prisoner convicted of a non-violent, non-sexual Class C or Class D felony shall be twenty-four (24) months. For all other prisoners who are *eligible* for parole:
>
>> (a) No parole deferment greater than five (5) years shall be ordered unless approved by a majority vote of the full board; and
>>
>> (b) No deferment shall exceed ten (10) years, except for life sentences.

(Emphasis added.)

As for why Dismore believes this statute entitled him to a new parole hearing, he summarizes his argument as follows:

> Other than deferments on a life sentence, KRS 439.340(14)(b) places no limits on the deferments to which it applies, and those deferments should be understood to include all *deferments* on a term of years, *including Mr. Dismore's*. By failing to conduct a new parole hearing, the Board has allowed a "deferment" to

-4-

"exceed ten (10) years," which is precisely what the statute prohibited. Had the General Assembly wished to limit this issue to future decisions, it would have used the same "shall be ordered" language as in subsection (a).

Appellant Brief at 21 (emphasis added).

Stated otherwise, Dismore believes that when the Board denied him parole in 1995, its decision did not affect his continued *eligibility* for parole and merely *deferred* reconsideration of that matter for a later date. From this, he reasons that because: (1) KRS 439.340(14)(b) limits deferments to a maximum of ten years, (2) he was not given a life sentence, and (3) he has not been given a parole hearing since 1995, he is now long overdue for a new parole hearing.

Dismore's logic is flawed at its inception, however, because he was given a "serve-out," not a "deferment," which are two different concepts. When the Board reviewed Dismore's parole eligibility in 1995, it had three options: It could either (1) grant parole; (2) issue a "deferment"; or (3) issue a "serve-out."[1, 2]

---

[1] When Dismore was convicted in 1987, the Board's operative regulation only explicitly referenced *deferments*. *See* 501 Kentucky Administrative Regulation ("KAR") 1:011 § 2 (1980) ("[a]fter the initial review for parole, subsequent reviews, so long as confinement continues, shall be at the discretion of the [B]oard; except that the maximum deferment given at any one time shall be eight (8) years."). The Board first explicitly stated its authority to issue serve-outs in the 1989 version of 501 KAR 1:030 § 4(d) (providing "the [B]oard reserves the right to order a serve out of any sentence."). All subsequent iterations of that regulation have since included the same language, or language of similar effect. *See, e.g.*, 501 KAR 1:030 § 3(2) (current) ("Subsequent parole review. Except as provided in KRS 439.340(14): (a) After the initial review for parole, a subsequent review, during confinement, shall be at the discretion of the [B]oard; and (b) The [B]oard, at the initial or a subsequent review, may order a serve-out on a sentence.").

[2] Regarding the Board's three options relative to parole (*i.e.*, granting parole, issuing a deferment, or issuing a serve-out), *see* (for purposes of illustration and not as persuasive

A "deferment" has at all relevant times been administratively defined as "a decision by the [B]oard that an inmate shall serve a specific number of months before further parole consideration."[3] It inherently means that the inmate may be *eligible* for parole in the future. On the other hand, a "serve-out" has at all relevant times been administratively defined as "a decision of the [B]oard that an inmate shall serve until the completion of his sentence."[4] A "serve-out" inherently means that the inmate will be *ineligible* for parole in the future. Dismore is perhaps likening deferments to serve-outs based on the notion that a "serve-out" can be set aside and thus, like a deferment, a serve-out does not necessarily foreclose the possibility of parole. However, likening a deferment to a serve-out in this context is a faulty premise: A deferment does not foreclose parole eligibility, whereas a serve-out – unless and until it is set aside – does.

We assume the General Assembly appreciated the difference between deferments and serve-outs when it enacted KRS 439.340. *See Garland v. Miller*,

---

authority) *Reyes v. Coy*, No. 2003-CA-002682-MR, 2004 WL 2914912, at *2-3 (Ky. App. Dec. 17, 2004) (unpublished); *see also Arnett v. Commonwealth*, No. 2022-SC-0006-MR, 2023 WL 7100423, at *9 (Ky. Oct. 26, 2023) (unpublished).

[3] 501 KAR 1:030 § 1(2) is the current location of the Board's definition of "deferment." The word was defined the same way prior to the enactment of KRS 439.340, but elsewhere in prior versions of that regulation. *See, e.g.*, 501 KAR 1:030 § 1(3) (2001).

[4] 501 KAR 1:030 § 1(10) is the current location of the Board's definition of "serve-out." The word was defined the same way prior to the enactment of KRS 439.340, but elsewhere in prior versions of that regulation. *See, e.g.*, 501 KAR 1:030 § 1(13) (2001).

611 S.W.3d 275, 279 (Ky. App. 2020) (explaining, "[w]e must presume the General Assembly was aware of the status of the law, including the common law," when it enacts legislation). At that time, the Board already had regulations in place codifying what it understood to be its authority from its enabling legislation to direct serve-outs rather than deferrals; and binding precedent from this Court had already approved – and discussed the operative effect – of the Board's interpretation and practice of directing serve-outs rather than deferrals. *See Simmons v. Commonwealth*, 232 S.W.3d 531 (Ky. App. 2007). With that in mind, nothing on the face of KRS 439.340 entitled Dismore to a new parole hearing. The statute only applies to "persons . . . eligible for parole." KRS 439.340(1). The General Assembly, when enacting the statute, was presumptively aware that inmates who are issued serve-outs rather than deferments are ineligible for parole absent some form of exception. KRS 439.340 provides no such exception.

Indeed, the only legislation which addresses serve-outs issued to inmates during or prior to 2011 – such as Dismore's – is an entirely different statute, KRS 439.3403. As the Board argued and the circuit court found below, that statute likewise offers Dismore no relief. In relevant part, it provides:

> (1) Except as provided in subsection (2) of this section, the [B]oard shall reconsider the parole of any prisoner as of June 8, 2011, who was given a deferment *or serve-out* of longer than sixty (60) months at the prisoner's most recent parole hearing.

(2) *No reconsideration shall be required under this section for any prisoner who has received a* deferment or *serve-out of longer than sixty (60) months if*:

> (a) The deferment or serve-out was approved by a majority vote of the full [B]oard; or

> (b) *The prisoner stands convicted of a criminal offense currently defined as a violent offense in KRS 439.3401* or as a sex crime in KRS 17.500, regardless of the date the crime was committed or the date of conviction.

(Emphasis added.)

There is no dispute that in 1987, Dismore was convicted of a capital offense that qualifies as a "violent offense" per KRS 439.3401(1)(a); *i.e.*, murder. The General Assembly provided clear language that these "reconsideration" hearings were not required for violent offenders. Thus, a plain reading of KRS 439.3403(2)(b) dispels any notion that Dismore has ever been *entitled* to have his serve-out reconsidered and his parole eligibility reinstated. As the circuit court correctly determined below, Dismore has never had any such right.

Having said that, we now proceed to Dismore's remaining argument, *i.e.,* his contention that the Board's practice of issuing serve-outs qualifies as unconstitutional "*ex post facto* punishment." This Court has already held in binding precedent that serve-outs do *not* qualify as such. *See Simmons*, 232 S.W.3d 531. *Simmons* is controlling precedent which our panel cannot overrule.

*See Taylor v. King*, 345 S.W.3d 237, 242 (Ky. App. 2010) (explaining to overrule Court of Appeals precedent, the Court of Appeals "would have to go *en banc*"). Moreover, in *Conn v. Kentucky Parole Board*, No. 2022-SC-0198-DG, 2024 WL 1708578 (Ky. Apr. 18, 2024) (to be published pending finality), our Supreme Court addressed and affirmed an opinion from this Court that followed *Simmons*. To be sure, the constitutional issues posed in *Conn* by those parties involved separation of powers and equal protection. Nevertheless, our Supreme Court reaffirmed at the onset of its opinion that "a serve-out makes no alteration to the judicially-imposed sentence itself[.]" *Id*. at *1. And, in concluding its opinion, the Court further explained that the Board's power to order a serve-out "does not encroach upon the judiciary's sentencing prerogatives, nor can we discern any *other* Constitutional infirmity present in the exercise of that power." *Id*. at *13 (emphasis added).

We also agree with that precedent and cite it as our basis for rejecting Dismore's *ex post facto* argument. To quote in relevant part our most recent pronouncement in that regard:

> "An ex post facto law . . . makes more onerous the punishment for crimes committed before its enactment." *Garland v. Commonwealth*, 997 S.W.2d 487, 489 (Ky. App. 1999) (internal quotation marks and citations omitted). Both our Kentucky Constitution (§ 19) and the United States Constitution (art. I, § 9, cl. 3 and art. I, § 10, cl. 1) prohibit *ex post facto* laws. Here, we are asked to

-9-

determine that a ruling of the Board, not a law passed by the legislature, is an improper *ex post facto* decision.

The Latin term *ex post facto* means "[d]one or made after the fact; having retroactive force or effect." BLACK'S LAW DICTIONARY (11th ed. 2019). And *retroactivity* means "[t]he quality, state, or condition of having relation or reference to, or effect in, a prior time; specif., (of a statute, regulation, ruling, etc.) the quality of becoming effective at some time before the enactment, promulgation, imposition, or the like, and of having application to acts that occurred earlier." BLACK'S LAW DICTIONARY (11th ed. 2019).

So, the gist of something being *ex post facto* is that it is an act, such as a new law, which reaches backwards in time to impact something which already occurred. The most classic example of an *ex post facto* violation is enacting a new law which makes illegal already-performed conduct which was not illegal at the time it was performed.

So, what did the Board do to reach back in time and change [the appellant's] sentence? Nothing.

In the law, the "appropriate inquiry" to determine whether an *ex post facto* problem exists is whether the change "results in increased punishment . . . ." *Martin v. Chandler*, 122 S.W.3d 540, 547 (Ky. 2003). [The appellant's] punishment was not increased. . . . [T]he Board dutifully considered whether to grant [the appellant's] parole after he had served roughly twenty-five years. That was *all* that was required. His sentence was not changed.

First, parole is *always* a matter of grace, not a matter of right or entitlement. *Garland*, 997 S.W.2d at 490 ("As we have stated previously, the appellant does not have a right to parole, and the Parole Board can never be required to release the appellant before the completion of his

-10-

maximum sentence.") (citations omitted). . . . Second, [the appellant] cites to no statute, regulation, or precedent which required the Board to review his parole status a second or subsequent time. To the contrary, 501 KAR 1:030 § 3(2)(b) explicitly permits, without limitations, the Board to "order a serve-out on a sentence."[5]

And we have held that even applying a 2003 version of that administrative regulation (which expressly permitted the Board to issue a serve-out mandate) to an inmate who was sentenced in 1983 (when the regulation did not expressly permit the Board to issue a serve-out) was not an *ex post facto* violation because the serve-out was not an "enhancement of punishment" or an "elongation" of the inmate's sentence so "the retroactive application of this revised regulation does not create an unconstitutional *ex post facto* violation." *Simmons v. Commonwealth*, 232 S.W.3d 531, 534 (Ky. App. 2007). Instead, we held that the inmate's sentence "remained at a fixed term" so "[t]he imposition of a serve-out is not punishment. It is merely a ruling by the Parole Board which is within its sound discretion" because it did not make the inmate's sentence "more onerous for crimes committed before the revised regulation was issued." *Id.* at 534-35.

. . .

Also, the Board did not lengthen [the appellant's] sentence. Both before and after the issuance of the serve-out, [the appellant] was sentenced to life imprisonment without the possibility of parole for twenty-five years. The Board reviewed [the appellant's] parole status after twenty-five years. That is all it was required to do. We understand that, as a practical matter, the serve-out dashed

---

[5] As previously discussed, under its regulations and prior to Dismore's 1995 parole hearing, the Board similarly "reserve[d] the right to order a serve out of any sentence." *See* 501 KAR 1:030 § 4(d) (1989).

-11-

[the appellant's] hope of being granted parole. However, his court-issued sentence . . . has never changed.

*Dunn v. Commonwealth*, No. 2020-CA-1430-MR, 2022 WL 2898323, at *2-3 (Ky. App. Jul. 22, 2022) (unpublished) (footnote omitted) (cited herein as persuasive authority pursuant to Kentucky Rule of Appellate Procedure 41(A)(3)).

Here, Dismore presents identical arguments; therefore, we must come to the same conclusion. His sentence, imposed by the judiciary, was not made more onerous by the Board's ruling within its discretion to order a serve-out.

## CONCLUSION

Considering the foregoing, we AFFIRM the Franklin Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Timothy G. Arnold
Frankfort, Kentucky

BRIEF FOR APPELLEES:

Seth E. Fawns
Frankfort, Kentucky